In the Matter of the Application of WILLIAM H.
REYNOLDS, Appellant, against JAMES C. CROPSEY,
Justice of the Supreme Court of the State of New
York, Respondent.

Appeal — prohibition — courts — practice — order of Appellate Division denying writ of prohibition a final order — extraordinary term of Supreme Court has same jurisdiction and is subject to same rules of law as other terms — statutory provision that terms of court may be adjourned from day to day or to specified future day applies to extraordinary terms — no justification for adjournment without day subject to future order of judge — direction that term be " continued " until further order — words " continued " and " adjourned " synonymous when thus used — term " continued " or " adjourned " without day is ended so far as consideration of new business is concerned — pending indictments may be moved at any term of court — last entry in minutes decisive whether term has been adjourned or kept alive — " recess " indicates temporary suspension of proceedings — court by taking " recess " is not thereby kept alive for months for the purpose of reconvening and considering new business.

1. An order of the Appellate Division denying a motion for a writ of prohibition is a final order and it is unnecessary to certify a question on granting permission to appeal to the Court of Appeals.

2. An extraordinary term of the Supreme Court called by the Governor pursuant to section 153 of the Judiciary Law (Cons. Laws, ch. 30) is nothing more or less than an additional term of court appointed for the time and place, to be held by the justice designated. When created it becomes a term of the Supreme Court with the same jurisdiction that belongs to any other term and is to be conducted in accordance with the rules of law governing all other terms of court with the exception of the designation of the judge.

3. The provision of section 7 of the Judiciary Law, that any term of a court of record " may be adjourned from day to day, or to a specified future day, by an entry in the minutes," is applicable generally to all terms of court held as provided by law — to an extraordinary as well as to the other terms of court. The justice may keep the term alive by adjourning from day to day or to a specified future day by an entry in the minutes, but there is nothing to justify

him in adjourning his term without day subject to his future order. An adjournment *sine die* ends the term.

4. Where, therefore, the justice presiding at an extraordinary term of the Supreme Court directs that the term be "continued until further order of court," the term comes to an end and cannot, after a lapse of eleven months, be revived, in the discretion of the judge, for the consideration and disposal of new business. The words "continued" and "adjourned" when used in this connection mean one and the same thing, and, when the extraordinary term was 'continued" without day, it was "adjourned" without day and thus came to an end. Nor is this affected by the fact that there are indictments pending which have been found at this extraordinary term and remain undisposed of. These indictments are pending in the Supreme Court, not any particular term thereof, and may be moved for trial at any term of the court.

5. In any event, the last entry in the minutes supersedes whatever may have been done before for the purpose of adjourning or continuing a term of court and is decisive of the question whether the term has been kept alive so that it may be reconvened. Where, therefore, by the minutes, it appears that at a date subsequent to the entry therein of the order that the term be "continued," the court reconvened and a "recess" was taken, the meaning and effect of a "recess" become controlling. A "recess" of a term of court indicates a temporary suspension of its activities. It has never been the practice or the understanding that a court by taking a recess could be kept alive for months to the end of being then unexpectedly reconvened for the purpose of taking hold of new business. Such cessation of the proceedings of a court is not a brief and temporary suspension of its activities keeping it alive for further business; it is an abandonment of the term of court which results in its death and termination.

*Matter of Reynolds* v. *Cropsey*, 215 App. Div. 683, reversed.

(Argued November 25, 1925; decided December 18, 1925.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered November 6, 1925, which denied a motion for an order of prohibition to restrain a justice of the Supreme Court from reconvening an extraordinary term of said court for the re-trial of an indictment charging the petitioner with the crimes of grand larceny, mis-

appropriation by a public officer and for wrongfully converting and paying out money belonging to a city.

*Abel E. Blackmar, Alfred M. Schaffer, Henry A. Uterhart* and *Peter P. Smith* for appellant.   The extraordinary Trial Term appointed to be held on April 7, 1924, in and for Nassau county, has terminated by reason of having been adjourned *sine die.*   (*Tipling* v. *Cole,* 21 Ont. 276; Work on Courts, 81; *State* v. *Ross,* 118 Mo. 46; *People ex rel. Saranac L. &. T. Co.* v. *Supreme Court,* 220 N. Y. 487; *Saranac Land & Timber Co.* v. *Roberts,* 187 App. Div. 361; 227 N. Y. 188; *Myers* v. *East Bench Irr. Co.,* 32 Utah, 215; *Irwin* v. *Irwin,* 2 Okla. 180; *Northrup* v. *People,* 37 N. Y. 203; *People* v. *Brodwell,* 2 Cow. 445; *People* v. *Clews,* 4 Abb. [N. C.] 256; *Stovell* v. *Emerson,* 20 Mo. App. 322.)   The adjournment taken on November 5, 1924, was intended as a final adjournment, *sine die.* (*People* v. *Draper,* 28 Hun, 1; *Savings Bank* v. *Byington,* 135 Iowa, 151.)

*Albert Ottinger, Attorney-General* (*Kenneth M. Spence* and *Robert S. Johnstone* of counsel), for respondent.   Since there was pending before the extraordinary term business to be disposed of and no affirmative action had been taken by the presiding justice ending the term, the extraordinary term continued.   (*Saranac Land & Timber Co.* v. *Roberts,* 227 N. Y. 188; *People ex rel. Weick* v. *Warden of City Prison,* 188 N. Y. 549; 117 App. Div. 154; *Union Pac. Ry. Co.* v. *Hand,* 7 Kan. 380; *Jones* v. *McClaughry,* 169 Iowa, 281; *Common* v. *Bannon,* 97 Mass. 214; *Hume* v. *Bowie,* 148 U. S. 245; *Ex parte Harrell,* 57 Ore. 95; *State ex rel.* v. *McBain,* 102 Wis. 431.) The taking of a recess by the court does not end or terminate the term.   (*People ex rel. Whitman* v. *Woodward,* 150 App. Div. 180.)

CRANE, J.   Section 153 of the Judiciary Law (Cons. Laws, ch. 30) reads as follows:

" The governor may, when, in his opinion the public

interest so requires, appoint one or more extraordinary special or trial terms of the supreme court. He must designate the time and place of holding the same, and name the justice who shall hold or preside at such term, and he must give notice of the appointment in such manner as, in his judgment, the public interest requires."

Pursuant to this provision the Governor on March 6, 1924, appointed an extraordinary Special and Trial Term of the Supreme Court to be held at the courthouse in the village of Garden City, Nassau county, on the seventh day of April, 1924, at ten o'clock in the forenoon of that day, and to continue so long as may be necessary for the disposal of the business which may be brought before it, and he designated one of the justices of the Supreme Court of the second judicial district to hold said term and to draw a grand jury. Notice of the appointment he also ordered to be published in certain named newspapers.

The court was opened on the day named in the order. There was no uncertainty as to when the term commenced as this was fixed by the designation of the Governor in his order, but a question has arisen as to whether or not the term has ended. The only limitation in the order is that it shall continue so long as may be necessary for the disposal of the business which may be brought before it. The term must, like all other terms, come to an end some time. How can this be accomplished? Is there any recognized method of procedure? The justice presiding certainly could terminate it, but how? The minutes of the court kept by the clerk generally contain a record of the way the court is convened and closed. It is conceded that if these minutes contained a statement that the court had adjourned *sine die*, then the term would have ended on the date of entry. If the minutes showed that the court with no unfinished business pending before it had adjourned without fixing a day then the same result would have followed. (*Saranac Land & Timber Co.* v. *Roberts*, 227 N. Y. 188.)

What was done in this case?   The term designated by the Governor's order commenced on April 7, 1924, and was presided over by the justice named in the order.   A grand jury was summoned and found an indictment against William H. Reynolds, the mayor of the city of Long Beach, and John Gracey, the city treasurer.   These defendants were tried and convicted on the 19th day of June, 1924.   Thereafter an indictment was found against one Will F. Phillips, who was tried and convicted at the extraordinary Trial Term on November 5, 1924.   This was the last case tried at this term.   On that day there appears the following entry in the clerk's minutes:

" November 5, 1924.

" Phillips trial.

" This term of court continued until further order of court.

" THOMAS S. CHESHIRE,

" *Clerk,*

" DANIEL E. SEALEY,

" *Deputy.*"

The only other entry is this:

" December 26, 1924.

" People v. Abraham Weinberg.

" Bail fixed.

" Recess

" THOMAS S. CHESHIRE,

" *Clerk.*"

Nothing further appears to have been done regarding this extraordinary term of court until October 19, 1925, when it is alleged that the justice designated in the Governor's order was about to convene the court for the purpose of retrying William H. Reynolds whose conviction on appeal to the Appellate Division had been reversed.

The facts presented, therefore, are these: On November 5, 1924, the justice presiding at the extraordinary term

directs that the term be continued until he orders otherwise. No definite day is set; it is left entirely to his discretion; it may continue indefinitely for months or years. What is this but an adjournment or a continuance of the term without a day; for an indefinite time?

This direction means that the term is " continued." The remaining words " until the further order of the court " add nothing to it. The Deputy Attorney-General realizing the force of the word " adjourned " and that according to law a term of court which is " adjourned " without day generally ends the term, insists that there is a distinction between " continued " and " adjourned." In the sense in which they are used in this connection they mean one and the same thing and have like effect. The Oxford Dictionary giving the meaning of " continue " used as a law term, says it signifies " to adjourn, prorogue, put off," and Bouvier's Law Dictionary defines a " continuance " as an adjournment of a cause to another day or a subsequent time. When, therefore, this extraordinary term was " continued " without day; that is, indefinitely, it was " adjourned " without day and thus came to an end.

We do not mean to hold that the ending of a term of court is dependent entirely upon a form of words used by a clerk in making his entries. Circumstances and conditions may indicate that the entry was an error and that no such effect was intended or understood. But taking the entries in this case followed by a suspension of all business for months leaves no doubt about the correctness of the entry and that the term was intended to be continued or adjourned indefinitely or in the discretion of the trial justice, which is the same thing.

Outside of taking bail in the case of Abraham Weinberg nothing more was done at this term of court for a period of eleven months. How was the court to designate the adjourned day; what was to bring the term into being again? We do not find that the presiding justice has

made any order or given any direction other than we may gather from the statement that the Attorney-General was issuing subpœnas for a certain day. As we read the record in this case it has been assumed that it was sufficient to notify the defendant to appear in court on some day when the trial justice would be present to open court. If a term may thus be continued for eleven months without any business being transacted before it, it may be continued for two or three years; in fact, there is no limit to the time. To state such a proposition is at once to reveal that there is something inherently wrong in it; such a thing cannot be. Such procedure is not the usual, ordinary and regular way in which courts move and legal business is disposed of. The days upon which the courts are to sit and terms to be held are a matter of public concern as to which the public should have some notice and especially litigants. This is fully accomplished when section 7 of the Judiciary Law is complied with and the courts are adjourned from day to day or to a specified future day stated in the minutes. This is the only way in which courts can properly and fairly be conducted.

The extraordinary term called by the Governor is nothing more or less than an additional term of court appointed for the time and place, to be held by the justice designated. It may be called to dispose of specified cases or as in this case to transact such business as may be brought before it. The term thus fixed and held is to be conducted in accordance with the rules of law governing all other terms of court with the exception of the designation of the judge. Like any other term of the Supreme Court held in Nassau county it could dispose of any business brought before it including civil cases and Special Term matters as well as criminal proceedings. As stated by this court in *People ex rel. Saranac Land & Timber Co.* v. *Supreme Court* (220 N. Y. 487, at p. 492), when created it became a term of the Supreme

Court with the same jurisdiction that belongs to any other term.

In *People* v. *Sullivan* (115 N. Y. 185) it was held that there is inherent power in the Supreme Court to adjourn its proceedings from day to day as long as it is necessary to finish the business legitimately brought before it unless by the terms of some statute its existence is sooner brought to a close. The power, however, is to be exercised by adjourning to some definite time if new business is to be taken up.

Section 7 of the Judiciary Law provides: "Any term of a court of record may be adjourned from day to day, or to a specified future day, by an entry in the minutes. Any judge of the court may so adjourn a term thereof, in the absence of a sufficient number of judges to hold the term." This provision is applicable generally to all terms of court held as provided by law. The term to be appointed by a Governor is authorized by the Judiciary Law and I can see no reason why this section 7 should not apply to such a term as well as to the other terms of court. The justice may keep the term alive by adjourning from day to day or to a specified future day by an entry in the minutes, but I find nothing whatever in the law or in any of the cases which justifies him in adjourning his term without a day subject to his future order. In *Saranac Land & Timber Co.* v. *Roberts* (227 N. Y. 188) the extraordinary term was adjourned from time to time until July 28, 1917, on which day no formal action was taken either to adjourn the court *sine die* or otherwise. The question presented to this court was whether the term had come to an end on July 28, 1917, so as to prevent the justice presiding from deciding a motion theretofore submitted to him. The court and apparently the parties assumed that as to any new business the extraordinary Trial and Special Term ceased to exist in July of 1917, and we, therefore, said (at p. 193): " It is necessary that the times and places of holding

courts be fixed in advance that jurors can be drawn therefor, and that notices can be given and the necessary steps taken to obtain jurisdiction of the parties in civil and criminal actions and proceedings." Approaching the question presented the opinion further states: " Our inquiry is, whether after a term has been duly appointed and convened, and a motion is made or a trial had therein, if the decision thereof is not rendered until such term has expired by express limitation *or by failure to adjourn it formally*, shall such term be deemed continued for the purpose of making and filing such decision."

The practice governing the holding and adjournment of terms we referred to in these words: " The terms of court in all or at least part of the state are appointed not only for a particular day but to continue for a fixed period of time or until adjourned without day." We held in this *Saranac* case that although the term of court had ended for new and further business yet it could be deemed to be continued for the purpose of deciding cases and matters finally submitted to it during its regular and formal sittings.

We are not now dealing with business in the court undisposed of. This extraordinary term could continue in existence by proper adjournment until the business pending before it had been disposed of. Trials could be continued until finished. Motions heard before final adjournment of the term could under the rule in the *Saranac* case above referred to be disposed of after the adjournment of the term, but as to *new* business the court had no power to take up and dispose of such matters after it had adjourned without a day and for an indefinite time. It is said that there are indictments pending which have been found at this extraordinary term and by the grand jury called for the extraordinary term and that these remain undisposed of. These indictments together with the indictments against Reynolds, still open for trial, are pending in the Supreme Court, not

any particular term thereof, and may be moved for trial at any term of the court. It is incorrect to say that they constitute unfinished business pending before the extraordinary term. If the court had adjourned *sine die*, and thus ended the term, what would have become of these indictments? They would not have fallen; the adjournment would not have resulted in a dismissal of the charges; they would still be pending. Where would they be pending? In the Supreme Court of which the extraordinary term was only an extra part for the purpose of disposing of any business including these indictments if they were moved for trial in that part. There is no mere magic in the words "*sine die;*" the same result follows when the court adjourns or continues without day subject to the call of the judge. The term ends. The occasion referred to in the Governor's order ceased to exist when the court remained inactive for nearly a year. The business brought before it had been disposed of, so far as that term of court was concerned.

We must look beyond this particular case and declare the law as applicable to all terms of court; they must have a definite time of beginning and as far as possible some definite time for ending; terms cannot continue indefinitely without business, to be revived in the discretion of a judge. This seems reasonable and so far as we can see the only way in which the trial of cases and proceedings in court can be properly and orderly conducted. Other courts have taken this same view of the law. (*State* v. *Ross*, 118 Mo. 23, 46; *Myers* v. *East Bench Irr. Co.*, 32 Utah, 215; *Irwin* v. *Irwin*, 2 Okla. 180; *Stovell* v. *Emerson*, 20 Mo. App. 322; *Wright* v. *Wallbaum*, 39 Ill. 554; 1 Encycl. Pleading & Practice, 243.)

With the remarks in the record and the briefs regarding the attitude of the trial justice, we have nothing whatever to do and have disregarded them.

This being a final order it was unnecessary to certify a question. (*Matter of Neglia* v. *Zimmerman*, 237 N. Y. 131.)

The order of the Appellate Division should be reversed and the application granted, without costs.

HISCOCK, Ch. J. (concurring).    I concur in the conclusion reached by Judge CRANE and for the reasons stated by him in his opinion.    I think, however, that there is another aspect of the facts upon which may be rested our decision that the extraordinary term of the Supreme Court had been terminated at the time when the justice appointed to hold the term proposed to reconvene it.

After the adjournment of the court on November 5th, 1924, and on December 26th, 1924, the court apparently was reconvened for the purpose of fixing bail and when that proceeding was concluded according to the minutes of the court a " recess " was taken.    This was the last step taken for the purpose of adjourning or continuing said term of court.    It supersedes whatever may have been done for that purpose before and it is decisive of the question whether the term had been kept alive so that it might be reconvened as was proposed.    In my opinion it was insufficient to keep the court alive, even if. we should assume that the first action of the justice to the effect that the term of court " be continued until the further order of the court " would have been sufficient, if unmodified, to accomplish that result.    As I say, that first action was superseded by the declaration of a recess and the meaning and effect of a recess, therefore, become controlling.

In my judgment a retrial of the *Reynolds* case after the Appellate Division had reversed the judgment of conviction and ordered a new trial, was new business and, therefore, we cannot approach the decision of the question whether the term of court had been kept alive for such new trial with that liberality of interpretation which we have held should be employed in the consideration of the question whether a term of court has been kept alive for the purpose of completing unfinished

business. (*Saranac Land & Timber Co.* v. *Roberts,* 227 N. Y. 188.)

Neither are we concerned with the question of the exact length of time for which a court might be kept in existence by the declaration of a recess. The decision of that question might very well be affected by the facts of a given case. The only question with which we are concerned is the one whether when a term of court has merely taken a recess and nothing more has been done to perpetuate its existence, it can be regarded as having been kept alive for a period of nine months so that it can then be reconvened for the purpose of transacting new business. It seems to me that to thus hold would v olate the technical definition of a recess and rules of common sense and ordinary practice in the procedure of courts.

A recess of a term of court decisively and inevitably indicates a temporary suspension of its proceedings. It denotes that its proceedings have been suspended for a short time for some purpose and everybody having business with it naturally understands that after such brief suspension it will resume its proceedings. But so far as I am aware it has never been the practice or the understanding that a court by taking a recess could be kept alive for months to the end of being then unexpectedly reconvened for the purpose of taking hold of new business. Such cessation of the proceedings of a court is not a brief and temporary suspension of its activities keeping it alive for further business; it is an abandonment of the term of court which results in its death and termination.

For this reason also I concur in the decision.

Orders reversed and application granted, without costs.

CARDOZO, POUND, MCLAUGHLIN, ANDREWS and LEHMAN, JJ., concur with CRANE, J; HISCOCK, Ch. J., concurs in opinion, in which also MCLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Orders reversed, etc.