THE PEOPLE OF THE STATE OF NEW YORK ex rel. MINA FOLK, Respondent, v. JOHN J. McNULTY, Sheriff of the County of Albany, N. Y., Appellant.*

Third Department, January 16, 1939.

* Affd., 279 N. Y. 563.

*John J. Bennett, Jr., Attorney-General* [*Henry Epstein, Solicitor-General,* and *John R. O'Hanlon, Assistant Attorney-General,* of counsel], for the appellant.

*George W. Foy* [*Robert E. Whalen* of counsel], for the respondent.

HEFFERNAN, J. The sheriff of Albany county has appealed from an order of the Albany Trial Term of the Supreme Court sustaining a writ of habeas corpus and discharging relator from his custody.

During the month of November, 1938, at the request of the Attorney-General, Mr. Justice HINKLEY, a justice of the Supreme Court, was assigned to sit as a committing magistrate in Albany county for the purpose of inquiring into certain alleged election irregularities then under investigation by the Attorney-General. As a result of that inquiry Mr. Justice HINKLEY issued a warrant upon an information laid before him charging relator with a misdemeanor in having violated section 61 of the Election Law and subdivision 2 of section 757 of the Penal Law in that she omitted to furnish to the board of elections of Albany county a sworn list of persons residing in her rooming or lodging house as required by statute.

After the execution of the warrant relator was arraigned before Mr. Justice HINKLEY, pleaded not guilty, demanded a jury trial and was admitted to bail. Relator's counsel moved that the charge against his client be transferred to the Police Court of the city of Albany on the ground that the latter court had exclusive jurisdiction of all misdemeanors committed within the city of Albany, including the misdemeanor with which relator was charged. Decision was reserved on this motion and an adjournment was

taken to November 9, 1938. On the adjourned date the motion of relator was renewed and thereupon Mr. Justice HINKLEY announced his determination that the Police Court of the city of Albany had exclusive jurisdiction of the crime charged and made an order transferring the case, among others, to that court and directed relator to appear therein on November 16, 1938.

On November 15, 1938, the Governor of the State, at the request of the Attorney-General, issued a proclamation under section 67 of the Executive Law appointing an Extraordinary Special and Trial Term of the Supreme Court to be convened on December 12, 1938, for which a grand jury should be drawn, " for the purpose of inquiry, trial and/or judgment which may be made, held, conducted or given thereat concerning or relating to any and all alleged violations of the Election Law and the elective franchise sections of the Penal Law in Albany County." The Governor designated Mr. Justice JOHN MACCRATE, a justice of the Supreme Court, to preside at such term. Pursuant to an order of Mr. Justice MACCRATE a grand jury was regularly summoned.

On November 16, 1938, relator's case was called in the Police Court, where she was rearraigned, renewed her plea of not guilty and demanded a jury trial, which was fixed for November 30, 1938, over the objection of the Attorney-General who requested that all further proceedings in the case be deferred until December 12, 1938, the date prescribed in the Governor's proclamation for the convening of the Extraordinary Term of the Supreme Court, and for which a jury was drawn. On the adjourned date, at the instance of the Attorney-General, a further adjournment was taken to December 7, 1938.

Relator was not brought to trial in the Police Court because in the interval the Attorney-General obtained from a justice of the Supreme Court an order to show cause why an order of prohibition should not be issued, under article 78 of the Civil Practice Act, restraining the police justice from conducting any further proceedings in the case. This order stayed all further proceedings on the part of the police justice until the further order of the court. The application for an order of prohibition was argued before Mr. Justice MACCRATE on December 19, 1938, and decision was reserved.

On the same day the grand jury in attendance upon the Extraordinary Term returned an indictment against relator charging the same misdemeanor as was set forth in the information which had been lodged with Mr. Justice HINKLEY. On arraignment upon the indictment, relator pleaded not guilty thereto, was held in $250 bail for trial, in default whereof she was committed to the custody of the sheriff

Relator immediately obtained a writ of habeas corpus returnable before a Trial Term of the Supreme Court, then in session in Albany county, presided over by Mr. Justice SCHENCK. Upon the return of the writ, after hearing counsel for the respective parties, the court sustained the writ and granted the order under review discharging her.

Thereafter and on December 28, 1938, Mr. Justice MacCRATE granted the application of the Attorney-General restraining the Police Court justice from further proceedings in the case.*

The question propounded is whether the grand jury at the Extraordinary Term of the Supreme Court appointed by the Governor had jurisdiction to find the indictment or whether the Albany Police Court has exclusive jurisdiction of such offense.

There is an apparent conflict between section 67 of the Executive Law, as last amended by chapter 126 of the Laws of 1925, pursuant to which the Extraordinary Term was convened, and section 183 of the Second Class Cities Law, as last amended by chapter 83 of the Laws of 1933.

The pertinent provisions of section 67 of the Executive Law are: " Whenever the Attorney-General shall advise the Governor that there is occasion for an Extraordinary Term in any such county *to inquire into and try cases arising under said article seventy-four of the Penal Law,* the Governor may appoint an Extraordinary Term of the Supreme Court to be constituted and held *for the trial of criminal cases in such county,* pursuant to section one hundred and fifty-three of the Judiciary Law. Grand and petit juries shall be drawn and summoned for said term in the manner provided by law, and *such cases shall be brought before such inquest and court as the Attorney-General shall direct.* All the provisions of sections sixty-two and sixty-five of this chapter shall apply to such Extraordinary Term."

It is quite significant that in 1928 when the Legislature, by chapters 759, 760 and 761 of the laws of that year, amended sections 263, 262 and 264, respectively, of the Code of Criminal Procedure relating to grand juries, it provided that when investigating crimes against the elective franchise as defined by article 74 of the Penal Law such an inquisitorial body might require the Attorney-General or any of his deputies to attend before them for the purpose of advising and aiding them in the performance of their duties. These amendments are confirmatory of the legislative intent with respect to the scheme of investigation and prosecution of violators of article 74 of the Penal Law prescribed in section 67 of the Executive Law. Further indication of the intent of the Legislature in this request is provided by subdivision 2 of section 62 of the Executive Law, the terms of which are expressly made applicable to an investi-

---

* See 169 Misc. 957.

gation conducted by the Attorney-General under section 67 of that law. That subdivision provides, in substance, that whenever required by the Governor the Attorney-General shall attend in person, or by one of his deputies, any term of the Supreme Court or appear before the grand jury thereof for the purpose of conducting in such court or before such jury such criminal actions or proceedings as shall be specified in such requirement.

Relator's distinguished counsel in an able and plausible argument asserts that, by virtue of section 183 of the Second Class Cities Law, the Police Court of Albany has exclusive jurisdiction to try and determine all charges of misdemeanor committed within that city. The material portion of that section is: " The Police Court shall have, in the first instance, exclusive jurisdiction to try and determine all charges of misdemeanor, committed within the city and shall also have exclusive jurisdiction to try and determine all complaints and charges for violation of city ordinances, and shall have the power and jurisdiction now or hereafter conferred upon Courts of Special Sessions by section fifty-six and fifty-six-a of the Code of Criminal Procedure."

The argument of counsel for relator is that the section just quoted repeals by implication section 67 of the Executive Law. In this we think he is mistaken. It is the law declared on many occasions by the Court of Appeals that a repeal by implication is not favored and that it will be upheld only where the repugnancy is plain and unavoidable. It is also the law that a statute, applicable to a particular class of cases, is not repealed by a general statute, broad enough in terms to embrace the cases covered by the special law, unless the intent to work a repeal is manifest. The determining consideration must be whether on comparison of the subject-matter of the two statutes, the one is fairly to be regarded as a revision of the other. (*Peterson* v. *Martino*, 210 N. Y. 412.)

It has been held by a long line of cases that statutes which are by their terms applicable to all subdivisions of the State of a particular class are general, and not local statutes. This line of cases includes *Matter of Church* (92 N. Y. 1); *Matter of New York Elevated R. R. Co.* (70 id. 327); *Admiral Realty Co.* v. *City of New York* (206 id. 110, 140); *People ex rel. N. Y. Electric Lines Co.* v. *Squire* (107 id. 593, 601); *Matter of McAneny* v. *Board of Estimate, etc.* (232 id. 377, 392, 393); *Matter of Burke* v. *Krug* (161 Misc. 687); *Adler* v. *Deegan* (251 N. Y. 467, 472, 473, 482). In the case of *People ex rel. Kipper* v. *Ellinger* (239 App. Div. 647; affd., 266 N. Y. 423) the Appellate Division held that the 1933 amendment to section 183 of the Second Class Cities Law was a general statute.

The provisions of the Executive Law which we have quoted, identically worded excepting for the descriptive titles of the statutes

referred to, were first embodied in the law of this State by chapter 302 of the Laws of 1899, amending the original Executive Law. They were re-enacted among the Consolidated Laws in 1909 and have been carried down into the present Executive Law unchanged. These provisions are patently designed to apply to an unusual and extraordinary situation, namely, where the Governor and the Attorney-General of the State agree that the proper enforcement of the elective franchise laws, in the interests of the public at large, requires the appointment of a Special Term of court and a special grand jury and the intervention of the Attorney-General as prosecutor.

It is equally clear from a reading of the clauses of section 67, quoted above, that it was the intention of the Legislature to designate the Extraordinary Term of the Supreme Court provided for therein as the forum wherein the " inquest " and " trial " of criminal cases arising under article 74 of the Penal Law should be conducted.

No distinction is made in the statute between misdemeanors and felonies; as a matter of fact a majority of the crimes enumerated in article 74 of the Penal Law are misdemeanors.

If relator is correct in her contention then we have the anomolous situation of an Extraordinary Term of the Supreme Court and a special grand jury called into action by formal proclamation of the Governor to investigate alleged election fraud in a county, yet powerless to consider:

(a) Misdemeanors committed within a city of the second class, of which the city Police Court would have " exclusive jurisdiction " under section 183 of the Second Class Cities Law.

(b) Misdemeanors committed within certain cities, of which the local City Court would have " exclusive jurisdiction " by special charter provisions.

(c) Misdemeanors committed within the city of New York, of which the Court of Special Sessions would have " exclusive jurisdiction " under the Inferior Criminal Courts Act.

(d) Misdemeanors committed within a village, of which the village police justice would have " exclusive jurisdiction " under section 182 of the Village Law.

(e) In the first instance, felonies committed within a village, of which the village police justice would have " exclusive jurisdiction to take the examination " under section 182 of the Village Law.

(f) The wrongful use by a police commissioner or a police officer of official power and authority to influence and control the political action of citizens. (Penal Law, § 756.)

(g) The wrongful acts of election officials in revealing to others the names of the candidates for whom voters have voted, or marking

ballots so that they can be identified (Penal Law, § 762); or knowingly and willfully permitting unqualified persons to vote, or willfully and unlawfully hindering electors from voting, or removing official ballots from polling places or committing any one of the other numerous acts of willful misconduct at a polling place enumerated in section 764 of the Penal Law.

(h) The wrongful use or threat to use intimidation or false or fraudulent device to influence citizens in voting or refraining from voting. (Penal Law, § 772.)

(i) The wrongful acts of government officials in, compelling or inducing government employees to pay political assessments. (Penal Law, § 774.)

(j) Crimes of conspiracy to commit any of the felonies enumerated in article 74 of the Penal Law, the elements of which may cut across city, village, town and county lines.

(k) Any felonies, such as those defined in section 763 of the Penal Law, the existence of which a grand jury could not discover without having first inquired into and acquainted itself with a series of similar and recurrent acts denominated as misdemeanors.

We are unwilling to give the statutes under consideration any such construction.

The words " in the first instance," as used in section 183 of the Second Class Cities Law, are words of limitation and are inapplicable here (*People* v. *McCarthy*, 168 N. Y. 549), and the words " exclusive jurisdiction," in the same statute, refer to jurisdiction among inferior courts and cannot be construed to limit the jurisdiction of the Supreme Court. (*People* v. *Wenk*, 71 Misc. 368.) Police Courts are inferior courts, not of record, and their jurisdiction is limited to such as may be specially conferred by statute. (State Const. art. 6, § 17; Judiciary Law, § 2; Code Crim. Proc. § 74.)

The two statutes under consideration are public acts relating to the same subject and, therefore, are in *pari materia*. It is the general rule that acts in *pari materia* are to be construed together as though forming parts of the same statute. (*Smith* v. *People*, 47 N. Y. 330; *People ex rel. Doscher* v. *Sisson*, 222 id. 387.)

It is to be noted that the misdemeanor defined in article 74 of the Penal Law is not among those minor crimes enumerated in section 56 of the Code of Criminal Procedure of which Courts of Special Sessions have in the first instance exclusive jurisdiction to hear and determine subject to the power of removal provided in section 57 of the Code of Criminal Procedure. The crime with which relator is charged is known as an indictable misdemeanor and the Police Court is not vested with exclusive jurisdiction thereof. (*People* v. *Harris*, 123 N. Y. 70.)

By section 252 of the Code of Criminal Procedure it is made the duty of a grand jury to inquire into all crimes committed or triable in a county and to present them to the court; no distinction is made between felonies and misdemeanors.

We are fully convinced that the Extraordinary Term of the Supreme Court has full jurisdiction in the case at bar and that the indictment against relator is valid.

We might well rest our decision on the grounds stated, but in our opinion there is a more basic, more compelling and more fundamental reason for rejecting relator's plea.

The Supreme Court is the only court of original general jurisdiction coextensive in the arena of its exercise with that of the sovereignty which created it. Its jurisdiction is general, unlimited and unqualified and the Legislature has no power to limit or qualify it. Any act of the Legislature which deprives the court of the jurisdiction it had at the time of the adoption of the Constitution or limits or qualifies it is unconstitutional and void. (*DeHart* v. *Hatch*, 3 Hun, 375; *People ex rel. Swift* v. *Luce*, 204 N. Y. 478; *Sill* v. *Village of Corning*, 15 id. 297; *Mussen* v. *Ausable Granite Works*, 63 Hun, 367; *People ex rel. Hill* v. *Supervisors*, 49 id. 476; *People ex rel. Mayor* v. *Nichols*, 79 N. Y. 582; *Alexander* v. *Bennett*, 60 id. 204; *Popfinger* v. *Yutte*, 102 id. 38; *Hutkoff* v. *Demorest*, 103 id. 377; *Matter of Malloy*, 278 id. 429.)

The Supreme Court had its origin in a statute passed by the Colony of New York on May 6, 1691 (1 Col. Laws, pp. 226–229), whereby, among other things, it was enacted " that there shall be held and kept a Supreame Court of Judicature, which shall be Duely & Constantly kept att the Citty of New Yorke and not Elsewhere, att the severall & Respective times hereafter mentioned. And that there be five Justices att Least appointed & Commissionated to hold the same Court, two whereof together with one Chief Justice to be a Quorum. Which Supream Court are hereby fully Impowered and Authorized to have Cognizance, of all pleas, Civill Criminall, and Mixt, as fully & amply to all Intents and purposes whatsoever, as the Courts of Kings Bench, Comon Pleas, & Exchequer within their Majestyes Kingdome of England, have or ought to have."

This statute was to remain in force for only two years, but it was renewed, recognized, and continued by colonial act or royal ordinance substantially in the words quoted until the adoption of our first Constitution. (1 Col. Laws, pp. 226–229, 303–306, 359, 380; 2 id. 462, 639, 948; 3 id. 546, 1007; 4 id. 1088; 5 id. 73.)

Referring to this statute, we quote the following from Fowler's Organization of the Supreme Court of Judicature of the Province

of New York (19 A. L. J. pp. 209–212): " This act founded the Supreme Court. * * * Not only did this act erect the tribunal which still continues the great law court of the State, it vested in it a jurisdiction which change of government, and constant reforms and revolutions in procedure, have been powerless to abridge in any material respect, for while its jurisdiction has been enlarged by its union with the Court of Chancery, its ancient jurisdiction still remains unimpaired. The Supreme Court of the province was the instrument by which the great body of the jurisprudence of the English Common Law was applied to New York."

The Supreme Court of the Colony of New York was invested with the jurisdiction of the King's Bench, Common Pleas and Exchequer in England " to all intents and purposes whatever." (Ordinance of May 15, 1699.)

The Supreme Court, so far as its jurisdiction and powers are concerned, was, in the main, found in existence by the Constitution of 1777. It did no more than recognize, and thus continue that existence. The Constitution of 1821 merely recognized the existence of the court and fixed the number of its members. (State Const. of 1821, art. 5, §§ 1–7.) That of 1846 declared that there should " be a Supreme Court; having general jurisdiction in law and equity." In the present Constitution the " Supreme Court is continued with general jurisdiction in law and equity." (State Const. art. 6, § 1.)

By section 35 of the Constitution of 1777, " such parts of the common law of England, and of the statute law of England and Great Britain, and of the acts of the Legislature of the Colony of New York, as together did form the law of the said Colony on the 19th day of April," 1775, were continued as the law of the State.

The second Constitution contained similar provisions as to what constituted the law of the State, except that it omitted " the statute law of England and Great Britain," and abrogated such parts of both common and statute law " as are repugnant to this Constitution." (State Const. of 1821, art. 7, § 13.)

The Constitution of 1846 abolished the Court of Chancery and repeated the provisions as to what should be the law of the State. (State Const. of 1846, art. 14, § 8; art. 1, § 17.)

The present State Constitution (Art. 1, § 16*) provides: " Such parts of the common law, and of the acts of the Legislature of the Colony of New York, as together did form the law of the said

---

* Renumbered § 14 by Constitution of 1938, effective Jan. 1, 1939.

Colony, on the nineteenth day of April, one thousand seven hundred and seventy-five, and the resolutions of the Congress of the said Colony, and of the convention of the State of New York, in force on the twentieth day of April, one thousand seven hundred and seventy-seven, which have not since expired, or been repealed or altered; and such acts of the Legislature of this State as are now in force, shall be and continue the law of this State, subject to such alterations as the Legislature shall make concerning the same. But all such parts of the common law, and such of the said acts, or parts thereof, as are repugnant to this Constitution, are hereby abrogated."

Section 64 of the Civil Practice Act reads: " The general jurisdiction in law and equity which the Supreme Court of the State possesses under the provisions of the Constitution includes all the jurisdiction which was possessed and exercised by the Supreme Court of the Colony of New York at any time, and by the Court of Chancery in England on the 4th day of July, 1776; with the exceptions, additions and limitations created and imposed by the Constitution and laws of the State. Subject to those exceptions and limitations the Supreme Court of the State has all the powers and authority of each of those courts and exercises the same in like manner."

The jurisdiction in law and equity possessed by the Supreme Court is not curtailed by a grant to another tribunal of jurisdiction as to a particular matter. (*Barone* v. *Ætna Life Ins. Co.*, 260 N. Y. 410.) Neither is its jurisdiction affected by legislation relating to the Surrogate's Court. The jurisdiction conferred by the Legislature on that court is simply concurrent with that possessed by the Supreme Court. (*Matter of Albanese*, 245 App. Div. 404; affd., 272 N. Y. 552.)

The Court of King's Bench, the powers of which the Supreme Court inherited, had general superintendency over all courts of inferior jurisdiction and might remove to itself by certiorari all proceedings from any of them. (1 Chitty Cr. Law, 374.) The court took cognizance both of criminal and civil causes. (1 Holdsworth's History of English Law, pp. 212–231.) Its jurisdiction was " very high and transcendent." (3 Black. Com. pp. 41–46.) That author says that for the purpose of transferring a cause to the King's Bench " a certiorari may be granted at the instance of either the prosecutor or the defendant; the former as a matter of right, the latter as a matter of discretion." (4 Black. Com. 321.)

The authorities are numerous that this power existed and was frequently exercised by the King's Bench in England, and that

it was transmitted by the Constitution of 1777, and subsequent Constitutions to, and is now possessed by, the Supreme Court of the State. (*Jones* v. *People*, 79 N. Y. 45.)

Relator's counsel asserts that section 18 of article 6 of the Constitution vests in a local criminal court jurisdiction to the exclusion of the Supreme Court. That argument is without merit. That section of the Constitution merely authorizes the Legislature to confer upon Courts of Special Sessions and inferior local courts jurisdiction to try offenses of the grade of misdemeanors which, before its adoption, they were without jurisdiction to entertain. (*People* v. *Harris*, 123 N. Y. 70; *People* v. *Kischel*, 276 id. 116.)

There is nothing in the language employed in section 18 which furnishes the slightest justification for the conclusion that the Legislature was thereby empowered to deprive the Supreme Court of its ancient jurisdiction of all crimes. The Legislature was simply authorized to confer concurrent jurisdiction as to certain misdemeanors on inferior courts. In enacting section 183 of the Second Class Cities Law the Legislature did not and could not limit or abridge the jurisdiction of the Supreme Court. Where a court has jurisdiction of a crime, a statute simply conferring the same jurisdiction on another court does not deprive the former of its jurisdiction, in the absence of an express provision or clear implication to that effect, but merely confers concurrent jurisdiction. (16 C. J. 150; *People* v. *Harris, supra.*)

True it is that there are more or less loose *dicta* in the books which would seem to indicate that the Legislature may confer upon inferior courts exclusive jurisdiction of misdemeanors. No well-considered authority in this State sustains such a proposition.

The order appealed from should be reversed and the writ of habeas corpus dismissed.

HILL, P. J., concurs; RHODES, J., concurs on the first ground stated in the opinion, and in the result; McNAMEE, J., dissents, with an opinion, and votes to affirm the order; BLISS, J., dissents, with an opinion, and votes to affirm the order.

McNAMEE, J. (dissenting). This is an appeal from an order of the Trial Term sustaining a writ of habeas corpus issued on the application of the relator who at that time was twice under arrest on a single charge of misdemeanor. The relator acknowledges that the first proceeding and arrest were regular, and were within a proper exercise of the jurisdiction of a tribunal to which exclusive jurisdiction, in the first instance, was granted by statute. But she contests the second arrest on the grounds that it was made without jurisdiction, and in any event was unwarranted by the laws of this State.

Information was laid before Mr. Justice HINKLEY of the Supreme Court sitting as a magistrate in Albany, and a warrant was issued by him on November 5, 1938, charging a misdemeanor. The relator was arraigned before the magistrate, not before the Special Term as appellant contends. Going through the pretentious ritual of bringing to the Third Judicial District a justice of the Supreme Court from another district to sit as a magistrate in Albany, was a proceeding for which there was no warrant, either in the Constitution, the statutes of the State, or any practice known to the common law. Such a course has no place in our judicial system. These forms gave no increase of power over that which the magistrate possessed as a justice of the Supreme Court, and the justice was still just a magistrate under the statute (Code Crim. Proc. §§ 146, 147).

After arraignment and on motion of the relator, the magistrate, on November ninth, transferred the charge pending before him to the Police Court of Albany for trial, fixed bail, and directed a hearing to be had on November sixteenth. The case was set down by the Police Court for trial on December twelfth. The Attorney-General obtained adjournments, and then " determined to move " the case to an Extraordinary Term of the Supreme Court then sitting in Albany to hear cases involving violations of the elective franchise. As the Attorney-General's brief states, " it became evident that some appropriate form of proceeding would be necessary " to that end; or to give, as he states it, " expression to the Attorney-General's direction." Thereupon the Attorney-General served on the police justice notice *directing* the transfer of the case to the Extraordinary Term.

On December nineteenth, however, the grand jury sitting in connection with the Extraordinary Term, indicted the relator on the same charge. The relator was arraigned, pleaded not guilty, and bail was fixed, and the court adjourned to December twenty-eighth, leaving the relator in custody. And at this time no order had been entered even purporting to transfer the charge to the Extraordinary Term. Thereupon habeas corpus was obtained to relieve the relator from the second arrest, and she was accordingly discharged. It is from that order this appeal is taken.

The Supreme Court has general jurisdiction in law and equity. (State Const. art. 6, § 1.) But this jurisdiction is not automatic, or self-starting. It is to be acquired, as it is in any other court, by presenting the jurisdictional facts in a justiciable cause and in the manner required by the Constitution, the statutes, and recognized practice. The *ipse dixit* of any party, or of any public official, will not effect that result. And the method followed in this case,

and before the Extraordinary Term, finds countenance in none of these.

Much reliance is placed on section 67 of the Executive Law, and references are made to the Criminal Code in the opinion of the Extraordinary Term, with the suggestions that some of these deal with the " ordinary normal prosecution " of crime, and " when there has been a neglect in the ordinary administration of law," and again when " normally local courts of justice are allowed to prosecute misdemeanors in the first instance." There does not appear to be any part of the Criminal Code which provides for " ordinary " or " normal " prosecutions of crime, or when there has been " neglect " not shown to exist, or when local courts are " allowed " to prosecute misdemeanors. This language, and all of these suggestions, are out of harmony with our law and recognized practice, and no authority is cited therefor.

The Criminal Code provides: " This Code applies to criminal actions, and to all other proceedings in criminal cases which are herein provided for, from the time when it takes effect." (Code Crim. Proc. § 962.) The Criminal Code does not appear to make any provision for " notices " by the Attorney-General as a basis for removing cases of misdemeanor from a court having jurisdiction to another court, or as a basis for ousting an inferior local court which is given exclusive jurisdiction in the first instance. I find no warrant whatever for any of the proceedings taken by the Attorney-General to remove the misdemeanor charge from the Police Court of Albany to the Extraordinary Term, or to the grand jury sitting in connection therewith. The proceedings taken are not provided for in the Code of Criminal Procedure, or by any known practice thereunder; and as Chief Judge CRANE has said: " The Code of Criminal Procedure establishes the practice in all criminal cases and the authority for the orders and judgments of the courts. Unless we can find there some justification for the above order it does not exist." (*People ex rel. Hirschberg* v. *Orange County Court*, 271 N. Y. 151, 155.)

It may be observed here that the Extraordinary Term granted an order of prohibition against the police justice, which also purported to transfer the case to itself, ten days after the indictment was found and ten days after the relator had been discharged from arrest under the indictment by the order appealed from. At that time the indictment, if it were arguable that it ever had validity, had lost its force by reason of the order sustaining the writ. And prohibition is applicable only to restrain a tribunal which proceeds without or in excess of jurisdiction, and when the grievance cannot be redressed by the ordinary proceedings

at law, in equity, or by appeal. It goes only to the question of jurisdiction; it may not be resorted to for the purpose of ousting a court which has perfect Constitutional and statutory jurisdiction, and which is proceeding in accordance therewith, as was the case here. (*People ex rel. Livingston* v. *Wyatt*, 186 N. Y. 383, 393; *People ex rel. Childs* v. *Extraordinary Trial Term*, 228 id. 463, 468; *People ex rel. Cuvillier* v. *Hagarty*, 238 id. 621; *Matter of City of New York* v. *Maltbie*, 248 App. Div. 36; affd., 274 N. Y. 464.)

It is not questioned that Albany is a second class city, and that its Police Court is validly constituted. Section 18 of article 6 of the Constitution vests the Legislature with power to confer on " inferior local courts * * * such jurisdiction of offenses of the grade of misdemeanors as may be prescribed by law." No other words of limitation are used. And when the Legislature exercised its powers given by the next paragraph of the same section, authorizing the creation of Children's Courts, it provided: " Nothing herein shall be construed as abridging the jurisdiction of the Supreme Court, or as abridging the authority of the Supreme Court * * * as now provided by law." (Children's Court Act, § 28.) Section 183 of the Second Class Cities Law prescribes that the Police Court in question shall have exclusive jurisdiction, in the first instance, of misdemeanors committed in the city. The same section of the Constitution enables the Legislature to empower these local courts to " try such offenses without a jury." No one would contend that a defendant may be tried in the Supreme Court for a criminal offense without a jury, except upon his consent. (Code Crim. Proc. §§ 4, 211, 222, 355.) Here is a clear constitutional departure from the common law as to the trial of misdemeanors, and a departure from the method of trial in courts of record under our Code. Thus without stretching the expression " in the first instance," the Police Court has plenary power under the Constitution and the statute to try the offense in question, whether the Supreme Court had jurisdiction or not. And the same section prescribes the manner in which a charge may be removed to another court for consideration by a grand jury, viz., by the method set down in sections 57 and 58 of the Code of Criminal Procedure.

When the Police Court entertained jurisdiction of the proceeding instituted before the magistrate, and proceeded therein, the case was pending in the Police Court, and that too in the exercise of its Constitutional and statutory jurisdiction. This jurisdiction was acquired and was being exercised before any attempt was made to oust the Police Court and vest jurisdiction in the Extraordinary Term. It is a rule too ancient and too universally known to require the citation of authority, that the court which first acquires

jurisdiction will proceed in the cause to judgment, in the absence of statutory authority for removal. When the Extraordinary Term assumed to take jurisdiction, and to oust the Police Court, it should have been able to assign the statute under which such transfer was authorized, and then proceed in accordance with the provisions of that statute. It presumed to make the removal here without any showing either in fact or in law. The Extraordinary Term should have refused to accept jurisdiction, or to entertain a motion for removal, as it should have refused to make the baseless order of prohibition and the belated order of transfer.

It is not necessary in the circumstances here to pass on the question whether the Constitution gave the Legislature power to impair the general jurisdiction of the Supreme Court, with regard to misdemeanors. (Art. 6, § 18.) The Legislature, however, under that section, did confer on the Police Court "such jurisdiction" as was adequate, in the first instance, to hear and try misdemeanors committed in Albany, and no method is declared by which that jurisdiction may be set aside by the Governor or the Attorney-General or even by the Supreme Court through any proceedings which have been resorted to here.

There is late authority for the rule of practice that a prosecuting officer may not bring about the removal of a cause of misdemeanor from a Court of Special Sessions having exclusive jurisdiction, to a court of record, for consideration by a grand jury, by procuring the certificate referred to in sections 57–59 of the Code of Criminal Procedure. The certificate of removal may be issued only upon the application of the defendant. On facts identical in principle with those in this case, where an unauthorized removal was thus effected, habeas corpus issued and the defendant was discharged (*People ex rel. Kohut* v. *Hendrickson*, 249 App. Div. 528; affd., 276 N. Y. 563). In the case at bar no resort was had to any statutory method of removal, but the Attorney-General simply "determined" on the removal. His determination was a nullity. And finally, it is now settled law that a grand jury is without authority to indict for a misdemeanor of which a Court of Special Sessions has exclusive jurisdiction in the first instance. (*People* v. *Monahan*, 257 N. Y. 388, affg. 233 App. Div. 16; *People* v. *Kraft*, 229 id. 281.) These cases and that of *People ex rel. Kohut* v. *Hendrickson* (*supra*) and the decisions therein cited, are abundant authority for making the order sustaining the writ of habeas corpus, and discharging the relator. .

The order should be affirmed.

Bliss, J. (dissenting). We have before us a case principally of statutory construction. The question is whether an Extraordinary

Term of the Supreme Court set up by the Governor under section 67 of the Executive Law has jurisdiction in the first instance to inquire into and hear and determine charges of crimes of the grade of misdemeanor arising under article 74 of the Penal Law alleged to have been committed within a city of the second class. This article defines crimes against the elective franchise, some of which are felonies while others are misdemeanors.

An information charging respondent with a violation of subdivision 2 of section 757 of the Penal Law, which is a misdemeanor, was first laid before a Supreme Court justice sitting in Albany as a committing magistrate. This magistrate determined that jurisdiction of the crime lay exclusively in the Police Court of that city and directed the respondent to appear in that court to answer the charge. While that charge was thus pending in the Police Court, the Governor appointed an Extraordinary Special and Trial Term of the Supreme Court to be held in the county of Albany for the purpose of inquiry, trial and/or judgment concerning or relating to all violations of the Election Law and the elective franchise sections of the Penal Law. A grand jury was drawn for this Trial Term and indicted the respondent for the same misdemeanor charged in the information. Following her arraignment upon such indictment and while in default of bail, she was discharged by a justice of the Supreme Court through a habeas corpus proceeding. This appeal is from the final order sustaining the writ of habeas corpus.

The Attorney-General contends that the Supreme Court has ample authority to sustain this indictment by reason of section 67 of the Executive Law and also the inherent jurisdiction with which it is endowed by the Constitution to inquire into and try any crime, misdemeanor as well as felony, and, if necessary, to order the removal of any case from an inferior court for that purpose.

The respondent bases her claim of the invalidity of the indictment principally upon section 183 of the Second Class Cities Law. It is argued that this statute is in conflict with section 67 of the Executive Law and prevails over it because it was adopted in its present form at a later date than section 67.

Legal hermeneutics require that we first find the legislative intent and in doing so seek harmony among the various statutes. A careful analysis of the various pertinent provisions of law, both statutory and constitutional, reveals a complete system for the enforcement of the law with regard to misdemeanors, including those against the elective franchise, and the statutes supplement each other rather than conflict.

Albany is a city of the second class. Section 183 of the Second Class Cities Law, as amended by chapter 83 of the Laws of 1933 subsequent to the amendment of section 67 of the Executive Law by chapter 126 of the Laws of 1925, provides that the Police Courts of cities of the second class " shall have, in the first instance, exclusive jurisdiction to try and determine all charges of misdemeanor, committed within the city." This section also provides that any charge of misdemeanor pending before such courts may be removed to a court sitting with a grand jury by the same method now or hereafter provided in sections 57 and 58 of the Code of Criminal Procedure except that a charge of a violation of a city ordinance shall not be so removed. Thus if this statute means what it says, the Supreme Court was without jurisdiction in the instant case either to inquire into the alleged misdemeanor or to hear and determine it. The vesting of similar exclusive jurisdiction over misdemeanors in other inferior courts, to the exclusion of any jurisdiction in the Supreme Court, constitutional or otherwise, has been upheld by the courts. Section 182 of the Village Law in practically the same language as that found in section 183 of the Second Class Cities Law gives identically the same exclusive jurisdiction to a police justice of a village. Our own court dismissed an indictment found in the Supreme Court for a misdemeanor committed within a village upon the ground that the crime charged was within the exclusive jurisdiction of the village police justice. (*People* v. *Monahan*, 233 App. Div. 16.) That decision was unanimously affirmed by the Court of Appeals (257 N. Y. 388). There was no intimation in *People* v. *Monahan* that this grant by the Legislature to the police justice of a village of *exclusive* jurisdiction to hear, try and determine charges of any misdemeanor committed in the village, violated any inherent constitutional jurisdiction of the Supreme Court.

Exactly the same *exclusive* jurisdiction in the first instance to hear and determine charges. of certain enumerated misdemeanors committed within their respective counties is given to Courts of Special Sessions, except in the county of New York and the city of Albany, by section 56 of the Code of Criminal Procedure. This grant of exclusive jurisdiction has been fully sustained. (*People* v. *Palmer*, 109 N. Y. 413; *People* v. *Knatt*, 156 id. 302.)

But we are told that section 183 of the Second Class Cities Law violates some mythical constitutional jurisdiction of the Supreme Court to hear and determine all charges of the grade of misdemeanor which it inherited in the dim and distant past. No constitutional provision giving to the Supreme Court such jurisdiction is brought to our attention to support this claim. No precedent is cited which

.

holds to that effect. And *People* v. *Monahan* (*supra*) completely demonstrates the fallacy of this argument for in that case a Supreme Court indictment for a misdemeanor was dismissed for lack of jurisdiction. If any such jurisdiction was once vested in the Supreme Court, it is now modified by section 18 of article 6 of the Constitution, under which the Legislature may give to inferior local courts similar in character to Courts of Special Sessions, "such jurisdiction of offenses of the grade of misdemeanors" as it sees fit. This language above quoted has been specifically held by the Court of Appeals to be broad and comprehensive enough to include all misdemeanors existing by statute at the time of its adoption by the People as well as such as might afterward be created by law. (*People ex rel. Comaford* v. *Dutcher*, 83 N. Y. 240.)

The general criminal jurisdiction of the Supreme Court is laid down by section 22 of the Code of Criminal Procedure. Here again we find recognition of the exclusive jurisdiction of the Police Court over certain misdemeanors and of the absence of such jurisdiction in the Supreme Court. This section provides:

" The Supreme Court has jurisdiction:

" 1. To inquire, by the intervention of a grand jury, of all crimes committed or triable in the county; but in respect of such minor crimes as Courts of Special Sessions or Police Courts have exclusive jurisdiction to hear and determine, in the first instance, the jurisdiction of the Supreme Court attaches only after the certificate mentioned in section fifty-seven of this Code.

" 2. To try and determine all such crimes, and to try all persons indicted for the same."

The appellant does not contend that the Extraordinary Term of the Supreme Court appointed by the Governor has any jurisdiction broader than or different from that of a regular Trial Term of the Supreme Court. Such contention cannot be successfully urged. (*Matter of Reynolds* v. *Cropsey*, 241 N. Y. 389; *People ex rel. Saranac Land & Timber Co.* v. *Supreme Court*, 220 id. 487.)

Now let us examine section 67 of the Executive Law to see if it conflicts with section 183 of the Second Class Cities Law or creates an exception to the exclusive original jurisdiction to hear and determine charges of misdemeanor vested by the latter statute in the Police Court of the city of Albany. Section 67 first provides that whenever the Governor shall advise the Attorney-General that he has reason to doubt whether in any county the law relating to crimes against the elective franchise is properly enforced, the Attorney-General shall require from the district attorney of such county, and it shall be the duty of such district attorney forthwith to make to the Attorney-General, a report of all prosecutions and

complaints within his county during the year then last past for offenses under the Election Law and article 74 of the Penal Law and of the action had thereon. The Attorney-General must then assign one or more of his deputies to take charge of prosecutions under these laws and the statute specifically says that " such deputy shall represent the People of this State in all such prosecutions before all magistrates and in all courts and before any grand jury having cognizance thereof." Thus the Legislature contemplated that it would be necessary for the Attorney-General or his deputies to appear and prosecute crimes against the elective franchise in more than one court and also before a grand jury which might then be in existence in that county, but he must go into such courts or before such a grand jury as already has cognizance thereof. The statute recognizes that a grand jury does not have cognizance of all crimes against the elective franchise.

Support is found in sections 262, 263 and 264 of the Code of Criminal Procedure for the view that section 67 contemplates that the Attorney-General shall go before all courts having jurisdiction of crimes against the elective franchise, including regularly appointed Trial Terms as well as Extraordinary Terms. By those sections *any* grand jury may call upon him and his assistants and deputies to attend before it and assist in an investigation, or it may seek his advice. Likewise he must be allowed under certain circumstances to so appear. Also, when required by the Governor, he must so appear. (Executive Law, § 62.)

After stating the manner of appointment of the Deputy Attorneys-General, section 67 of the Executive Law then states: " Whenever the Attorney-General shall advise the Governor that there is occasion for an Extraordinary Term in any such county to inquire into and try cases arising under said article seventy-four of the Penal Law, the Governor may appoint an Extraordinary Term of the Supreme Court to be constituted and held for the trial of criminal cases in such county, pursuant to section one hundred and fifty-three of the Judiciary Law."

Thus the statute authorizes the creation of an Extraordinary Term of the Supreme Court " for the trial of criminal cases " in such county exactly the same as the Governor may do under section 153 of the Judiciary Law. This Extraordinary Term, then, is no different from any other Extraordinary Term appointed by the Governor. Nor does it differ from a regularly appointed Trial and Special Term of the Supreme Court except as to the manner of its appointment. The Governor cannot confer any jurisdiction upon it in addition to that already possessed by the Supreme Court sitting at Trial Term. The difference between an

Extraordinary and regularly appointed term is solely in the manner of the appointment. (*People ex rel. Saranac Land & Timber Co.* v. *Supreme Court*, 220 N. Y. 487; *Matter of Reynolds* v. *Cropsey*, 241 id. 389.) The fact that it is sitting in Extraordinary Term does not give to the court power to try cases of which it does not otherwise have cognizance.

Section 67 of the Executive Law next provides that grand and petit juries shall be drawn and summoned for the Extraordinary Term and that such cases shall be brought before such inquest and court as the Attorney-General shall direct. Surely this does not give to the Attorney-General power to confer jurisdiction upon the Extraordinary Trial Term by his election to bring any particular case before it. Such construction is not even contended for by the Attorney-General. This conclusion finds further support in the final provisions of the section that the district attorney and other local officers shall aid the Attorney-General in such prosecutions and that the jurisdiction conferred upon the Attorney-General by such section to prosecute crimes is concurrent in each county with that of the district attorney, " but whichever of such officers shall first assume jurisdiction of a particular offense shall have exclusive jurisdiction to prosecute for the same " unless the Governor otherwise orders.

Thus section 67 gives the Extraordinary Trial Term no jurisdiction not already enjoyed by the Supreme Court sitting at a regularly appointed Trial Term and contains no provision giving to it specific authority to inquire into, hear or determine a misdemeanor which would otherwise come within the exclusive original jurisdiction of the Police Court of a city of the second class, the police justice of a village or any other inferior local court.

There is no conflict between section 67 and section 183 of the Second Class Cities Law. On the contrary, there is revealed complete harmony between the two sections and a legislative intent that the Attorney-General shall prosecute crimes against the elective franchise in all proper courts having cognizance thereof.

The Legislature conferred upon the City Court of the City of Albany exclusive jurisdiction in the first instance to hear and determine all misdemeanors committed within the city. The indictment in question found by the grand jury formed in connection with the Extraordinary Trial Term of the Supreme Court was beyond the jurisdiction of that body and was void.

The order appealed from should be affirmed, with fifty dollars costs and disbursements.

Order reversed upon the law and facts, and the writ of habeas corpus dismissed.