George MORRIS, Petitioner,

v.

Edward REYNOLDS, Superintendent of Mohawk Correctional Facility, Respondent.

No. 98 Civ.5439 VM.

United States District Court, S.D. New York.

Aug. 3, 2000.

George Morris, Rome, NY, for Petitioner.

### DECISION AND ORDER

MARRERO, District Judge.

George Morris ("Morris" or "Petitioner") petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In support, Morris alleges that after he had entered a plea of guilty to a misdemeanor charge on which he was indicted, a state trial court judge improperly reinstated a previously dismissed felony count in the same indictment. Morris argues that such reinstatement violated his constitutional right under the Fifth Amendment of the United States Constitution not to be twice put in jeopardy. The Magistrate Judge, to whom the petition was referred, issued a Report and Recommendation advising that the habeas petition be granted and that Morris be released from state custody. For the reasons set forth below, the Court declines to accept the Report and Recommendation and denies the petition.

### FACTS [1]

Morris was indicted on December 9, 1993 for criminal possession of a weapon in the third degree (a Class D felony) and the lesser included offense of criminal possession of a weapon in the fourth degree (a Class A misdemeanor) for carrying a loaded pistol on November 9, 1993. On March 4, 1994, Petitioner moved to dismiss the indictment for insufficient evidence. The State opposed the motion in a written response dated March 24, 1994. Justice Dominic Massaro of the New York State Supreme Court, Bronx County (the "Trial

---

1. The facts described herein are taken from the records submitted in connection with Morris's petition.

Justice"), orally dismissed the felony count at a calendar call on May 10, 1994.

During a conference held on June 7, 1994, the Trial Justice acknowledged that he had previously dismissed the felony count. Asked by Morris's counsel for a copy of the written decision on Morris's motion, the Trial Justice replied that a copy could be obtained from the court's clerk and that there "probably" was one in the file. *See* Transcript from Hearing in *People v. Morris,* dated June 7, 1994, at 2–3; Affidavit of Raffaelina Gianfrancesco in Opposition, dated July 20, 1999 ("Gianfrancesco Aff."), Ex. 2.

Morris was scheduled to plead to the misdemeanor charge on August 1, 1994. Before his plea was taken, the prosecutor asked the Trial Justice for a copy of the written decision concerning the felony count and was told that she should have gotten a copy of it sooner. *See* Gianfrancesco Aff., Ex. 2. On that day, over the prosecutor's protest that there was no written decision dismissing the felony count (*see* Gianfrancesco Aff., Ex. 2), the Trial Justice allowed Morris to withdraw his earlier plea of not guilty and to enter a plea of guilty to the misdemeanor charge, which the Trial Justice characterized as the "remaining count." *See* Transcript from Hearing in *People v. Morris,* dated Aug. 1, 1994, at 14. After allocution, the Trial Justice accepted the plea, indicating that he would impose a sentence of three years' probation. *See id.* at 12. The prosecutor averred that "[d]irectly after the plea was taken," (*see* Gianfrancesco Aff., Ex. 2), she called the Trial Justice's Law Secretary to request a copy of the Trial Justice's written decision and was informed that the decision was not "completed" but that it would reflect that the Trial Justice had found the evidence before the grand jury sufficient to sustain the indictment. *See id.*

"Several days later," the prosecutor received a copy of that decision. *See id.* The Trial Justice's written decision, which was dated July 29, 1994 (the "Decision"),

formally denied Morris's motion to dismiss the felony count. The Decision found that the "credible evidence educed from the Grand Jury is legally sufficient to sustain the indictment." *Id.,* Ex. 3.

During Morris's sentencing on October 21, 1994, the Trial Justice orally confirmed his reinstatement of the felony count, asserting that the previous dismissal was issued in error:

> After review, [the felony count] is reinstated. I will afford the gentleman the opportunity to withdraw his plea, which was obviously made under the impression that that had been reduced—I mean, dismissed.
>
> . . .
>
> On July 29th, 1994, the Court issued its written decision, Court [sic] having pointed out that the dismissal of Criminal Possession of a Weapon in the Third Degree previously enunciated from the Bench on 5/10, ma'am, I believe not 6/7, but in any event was incorrect. When the matter was reduced to the written decision, the Court realizing it's [sic] own error, corrected itself. And having done so, any Bench decision rendered either on 5/10 or 6/7 is withdrawn and the decision of July 29th, 1994 stands.

Transcript from Hearing in *People v. Morris,* dated Oct. 21, 1994 ("Oct.Tr."), at 2, 7–8. The Trial Justice offered to allow Morris to withdraw his plea to the misdemeanor charge, which the court acknowledged had been made under the impression that the felony count had been dismissed. *See id.* Morris refused. The Trial Justice then, over Morris's objection, vacated the misdemeanor plea.

### PROCEDURAL HISTORY

In December 1994, Morris filed a petition for prohibition with the Appellate Division, First Department, under Article 78 of New York's Civil Practice Law and Rules ("C.P.L.R.") seeking to prohibit the Trial Justice from carrying out his decision to vacate Morris's misdemeanor guilty plea

and reinstate the felony count, and also to compel the Trial Justice to sentence him to three years probation, in accordance with the terms of Morris's August 1, 1994 misdemeanor plea. As Respondents, Morris's appeal named the Trial Justice and the Bronx County District Attorney. The petition advanced two arguments: that (1) the Trial Justice had no authority, sua sponte and unilaterally without Petitioner's consent, to vacate the earlier plea and reinstate the previously dismissed felony count, absent some impropriety associated with the taking of the plea (*see* Verified Petition, dated Dec. 6, 1994 ("Verified Petition"), ¶¶ 19, 22 [2]); and (2) the reinstatement of the felony count violated Morris's double jeopardy rights under the United States Constitution. *See id.*, ¶ 22.

The Appellate Division granted Morris's petition, with two Justices dissenting. *See Van Leer–Greenberg ex rel. Morris v. Massaro*, 215 A.D.2d 283, 626 N.Y.S.2d 779 (1st Dep't 1995). The majority found that no statutory authority existed permitting the Trial Justice to vacate a guilty plea without the defendant's consent. *See id.* at 780. Moreover, the court found that despite the Trial Justice's attempted reinstatement of the felony count, because prior agreement on a plea to the lesser charge had been reached and there was no change in circumstances, Morris was entitled to the benefit of his plea bargain. *See id.*

The dissent argued that since the Trial Justice "ruled in error, he has the inherent power to vacate the plea, which would have been improper, prior to the imposition of sentence and to correct his own error and reinstate the previously dismissed charge." *Id.* at 781. Accordingly, the dissenters concluded that the Trial Justice merely exercised inherent authority to correct his error when he vacated the guilty plea and reinstated the felony count. *See id.* The dissent further maintained that since the

trial court had the inherent power, prior to the imposition of sentence, to vacate an illegal or invalid plea and "restore the action to its pre-plea status," further proceedings would not be barred by double jeopardy concerns. *See id.* at 782. In such circumstances, (a) vacatur of a guilty plea was not the equivalent of an acquittal based on an adjudication as to the factual elements of the charge, (*see id.*), and (b) the double jeopardy clause was not violated because the proceeding did not "terminate" in a "judgment"—a conviction and the sentence imposed thereon—but only in a "conviction" by virtue of a guilty plea. *See id.*

Shortly after its decision, the Appellate Division granted the Respondents leave to appeal to the New York Court of Appeals and certified a question, (*see Van Leer–Greenberg ex rel. Morris v. Massaro*, 216 A.D.2d 972, 628 N.Y.S.2d 1013 (1st Dep't 1995)), as provided for in the case of an appeal that may be taken by permission. The question presented to the Court of Appeals was whether the Appellate Division's decision and order entered on May 23, 1995 was properly made. *See* Objections to the Magistrate's Report and Recommendation, dated Jan. 20, 2000 (the "Objections"), Ex. 5.

A unanimous Court of Appeals declined to answer the certified question and reversed the judgment of the Appellate Division, holding that the Trial Justice had not acted improperly because a trial court has the inherent authority to correct its own error before imposition of sentence. *See Van Leer–Greenberg ex rel. Morris v. Massaro*, 87 N.Y.2d 996, 642 N.Y.S.2d 618, 665 N.E.2d 188, 189 (1996). On June 4, 1997, Morris entered a guilty plea to the felony count and was sentenced to between two-and-a-half and five years in prison. Morris did not appeal this conviction.

---

**2.** The Verified Petition contains two paragraphs numbered "22." The reference here is to the first such numbered paragraph.

Morris filed with this Court in March 1998 a petition for a writ of habeas corpus which was later amended to remove unexhausted claims and refiled as the instant petition raising two points as grounds for relief. These arguments were the same ones Morris had made in his state court appeal: that (1) absent impropriety in the taking of the plea, the Trial Justice lacked authority sua sponte and without Morris's consent to vacate Morris's plea and restore the previously dismissed felony charge and (2) the reinstatement of the felony count violated Morris's federal double jeopardy rights. *See* Amended Petition for a Writ of Habeas Corpus, dated May 21, 1999, at 3–4. The State's response to Morris's amended petition argued that Morris's first ground must be dismissed because it did not raise a federal constitutional issue (*see* Memorandum of Law in Opposition to Writ, dated July, 1999, at 13), and that Morris's rights under the Double Jeopardy Clause were not violated because the vacatur of a guilty plea was not the equivalent of an acquittal based on the adjudication of the factual elements of the charge. *See id.* at 16.

Counsel was appointed in August 1999 to represent Morris with regard to this petition. The Magistrate Judge issued a thorough, reasoned Report and Recommendation (the "Report") on December 16, 1999. With respect to Morris's first ground, the Magistrate Judge found that the argument raised a question of state law authoritatively answered by the New York Court of Appeals. *See* Report at 13. The analysis of the constitutional claim, however, yielded a conclusion that Morris's double jeopardy rights were violated, prompting a recommendation that Morris be released. *See id.* at 29–30. The Bronx County District Attorney, representing the State, filed objections to the Report. Morris submitted a response to the objections, urging that the Magistrate Judge's findings be upheld.

## STANDARD OF REVIEW

### A. *Magistrate Judge's Report*

The Federal Magistrate Act provides that a district judge may "designate a magistrate to conduct hearings, including evidentiary hearings" in order to "submit to a judge of the court proposed findings of fact and recommendations for the disposition ... of applications for posttrial relief made by individuals convicted of criminal offenses...." 28 U.S.C. § 636(b)(1)(B) (2000). In reviewing the Report, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(2000); *see* Fed.R.Civ.P. 72(b). Any party may object to the Magistrate Judge's findings and recommendations. *See id.* If an objection is timely filed, as is the case here, the Court is bound to make a "de novo determination of those portions of the report ... or recommendations to which objection is made." *Id. See United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997).

### B. *Anti–Terrorism and Effective Death Penalty Act*

As a preliminary matter, the Court notes that, because Morris's petition was filed after the effective date of the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), this action is governed by the habeas statute as amended. *See Williams v. Taylor,* —— U.S. ——, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); 28 U.S.C. § 2254. Pursuant to the various sections of 28 U.S.C. § 2254, this Court's review is guided by certain restrictions on the nature and extent of review that a federal court can conduct in considering a habeas petition.

### 1. *Exhaustion*

A federal court may entertain a petition for a writ of habeas corpus only where the petitioner has first "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A) (2000).

*See Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Caballero v. Keane,* 42 F.3d 738, 740 (2d Cir.1994); *Daye v. Attorney General of New York,* 696 F.2d 186, 190 (2d Cir.1982). This requirement mandates a habeas petitioner to have "fairly presented" in state court the claims that are raised in the habeas petition. *Picard,* 404 U.S. at 275, 92 S.Ct. 509. *See Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995); *Strogov v. Attorney General of New York,* 191 F.3d 188, 191 (2d Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 2723, 147 L.Ed.2d 987 (2000); *Gonzalez v. Sullivan,* 934 F.2d 419, 422 (2d Cir.1991). The petitioner must present both the factual and legal premises of his claims to the state court. *See Daye,* 696 F.2d at 191–92. In this case, the State has conceded that the two claims Morris raises in the instant petition were exhausted in state courts. *See* Gianfrancesco Aff., ¶ 19 n. 1; Report at 12. The Magistrate Judge found that these claims were exhausted. *See* Report at 12. This Court finds sufficient support in the record to sustain the Magistrate Judge's finding in this regard. Accordingly, this Court concludes that Petitioner's claims have been exhausted.

### 2. *Presumption of Correctness*

■ In a habeas corpus proceeding, "a determination of a factual issue made by a state court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1) (2000). Petitioner, however, may rebut the presumption by clear and convincing evidence. *See id.; Pons v. Artuz,* 00 Civ.2004, 2000 WL 777942, at *2 (2d Cir. June 14, 2000). Consequently, this Court presumes that the factual findings of the New York courts are correct and will not set aside those findings unless " 'the material facts were not adequately developed at the State court hearing' or the court's factual determinations are not fairly supported by the record." *James v. Greiner,* 99 Civ. 2513, 2000 WL 233696, at *1 (2d Cir. Feb. 16, 2000) (quoting *Smith v. Mann,* 173 F.3d 73, 76 (2d Cir.1999)). In this case, the Court concludes that deference should be accorded to the New York state courts' factual findings and pertinent elaborations. *See* discussion, *infra.*

### 3. *The "Contrary to" and "Unreasonable Application" Prongs*

Section 2254 of the AEDPA now provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States....

28 U.S.C. § 2254(d)(1) (2000).

The United States Supreme Court recently decided the proper interpretation of section 2254(d)(1) and the manner in which a federal court is to consider the legal conclusions of a state court. *See Williams,* —— U.S. ——, 120 S.Ct. 1495, 146 L.Ed.2d 389. The Court held that § 2254(d)(1) defines two categories of cases, each with *independent* meaning, in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. *See id.* at 1519. Parsing the explicit text of the statute, the Court stated that a federal court may grant a writ of habeas corpus if the state court decision is either (1) "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." *Id.*

■ A state court's decision may be held contrary to clearly established Supreme Court precedent in either of two

occasions: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." *Id.* at 1519–20. Regarding the "unreasonable application" prong of section 2254(d)(1), the Court held that a state court decision involves an unreasonable application of its precedent "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 1523. The Court further commented that

> an unreasonable application of federal law is different from an incorrect application of federal law.... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 1522. The relevant inquiry under this clause, therefore, is "whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1521.

■ The Court further addressed the meaning of the phrase "clearly established Federal law." *See id.* at 1523. The phrase restricts the source of clearly established law *solely* to the Supreme Court's jurisprudence—"the holdings, as opposed to dicta, of [the] Court's decisions as of the time of the relevant state-court decision." *See id.* Accordingly, this Court, sitting as a federal habeas court in reviewing Morris's petition, is guided by and restricted to applicable United States Supreme Court precedent.

As of the time the Magistrate Judge issued the Report, *Williams* had not been decided. The Magistrate Judge determined, however, that he "need not await the Supreme Court's decision ... since the AEDPA review standard does not apply to this case, because no state court adjudicated the merits of the federal constitutional issue." Report at 15. Because this Court concludes that the New York state courts adjudicated Morris's double jeopardy claim, the Court finds that *Williams* does apply to this case.

## THE MAGISTRATE JUDGE'S REPORT

The Magistrate Judge determined that Morris's first claim "raises a question of state law that was authoritatively answered in the negative by the New York Court of Appeals" and concluded that "[t]his Court has no power to disturb that finding." Report at 13. Regarding Morris's double jeopardy claim, the Magistrate Judge stressed that although both Morris and the State presented arguments concerning the double jeopardy issue to the state courts, neither the First Department majority nor the Court of Appeals, expressly or impliedly, adjudicated the merits of the federal double jeopardy issue. *See* Report at 9, 10, 15, 17. Consequently, the Magistrate Judge engaged in a de novo review of Morris's double jeopardy claim. *See* Report at 15–17. Notwithstanding the Magistrate Judge's exhaustive effort and considered analysis, this Court is unable to sustain his findings in this regard. In some material ways, this Court's reading of the record differs from the Magistrate Judge's interpretation. The Court concludes that both the factual and legal premises of Morris's habeas claims were fairly presented to the New York state courts and that those courts adjudicated the merits of Morris's double jeopardy claim.

## A. *Article 78: Extraordinary Remedy and Double Jeopardy*

The New York Court of Appeals has long held that prohibition is an "extraordi-

nary remedy." *State v. King*, 36 N.Y.2d 59, 364 N.Y.S.2d 879, 324 N.E.2d 351, 353 (1975). Invocation of the remedy is appropriate "only when there is a clear legal right," *Nicholson v. State Comm'n on Judicial Conduct*, 50 N.Y.2d 597, 431 N.Y.S.2d 340, 409 N.E.2d 818, 821 (1980) (quoting *Dondi v. Jones*, 40 N.Y.2d 8, 386 N.Y.S.2d 4, 351 N.E.2d 650, 654 (1976)), and "solely to prevent or control a body or officer acting in a judicial or quasi-judicial capacity from proceeding or threatening to proceed without or in excess of its jurisdiction . . . ." *Town of Huntington v. New York State Div. of Human Rights*, 82 N.Y.2d 783, 604 N.Y.S.2d 541, 624 N.E.2d 678, 679 (1993) (quoting *Schumer v. Holtzman*, 60 N.Y.2d 46, 467 N.Y.S.2d 182, 454 N.E.2d 522, 524 (1983)).

■ Prohibition is not available to correct the common legal errors of litigation, whether procedural or substantive, no matter how egregious. *See La Rocca v. Lane*, 37 N.Y.2d 575, 376 N.Y.S.2d 93, 338 N.E.2d 606, 609 (1975), *cert. denied*, 424 U.S. 968, 96 S.Ct. 1464, 47 L.Ed.2d 734 (1976). The orderly administration of justice requires that the correction of such errors be left to the ordinary channels of review upon appeal. *See id.* Prohibition, however, provides the means to prevent an arrogation of power in violation of a person's rights, particularly constitutional rights. *See Nicholson*, 431 N.Y.S.2d 340, 409 N.E.2d at 821. A leading authority on New York practice has commented on the use of the prohibition proceeding to address such fundamental rights:

> Prohibition is an extraordinary remedy, available at best only as a matter of judicial discretion and not as a matter of right. Given an extraordinary showing, however, such as a potential violation of the double jeopardy rule . . . prohibition will issue to enjoin even a criminal action. While courts are naturally loath to restrain exercises of jurisdiction by another court, they will do so when the latter, by the very exercise, threatens fundamental constitutional rights.

David D. Siegel, *New York Practice*, § 559 (3d ed.1999).

The New York Court of Appeals has further held that a proceeding in the nature of prohibition under Article 78 instituted under a theory that a defendant could not be twice placed in jeopardy for the same offense "is the traditional remedy designed for this kind of situation." *Kraemer v. County Court of Suffolk County*, 6 N.Y.2d 363, 189 N.Y.S.2d 878, 160 N.E.2d 633, 634 (1959). *See* N.Y. C.P.L.R. § 7801, Practice Commentary C7801:4 (McKinney 1994) (prohibition proceeding is appropriate in connection with a criminal prosecution in potential violation of double jeopardy). More recently, other New York state courts have confirmed that "an article 78 proceeding in the nature of prohibition is an appropriate vehicle by which to raise the bar of double jeopardy against further criminal prosecution." *Northrup v. Relin*, 197 A.D.2d 228, 613 N.Y.S.2d 506, 508 (4th Dep't 1994), *leave to appeal denied*, 84 N.Y.2d 803, 617 N.Y.S.2d 137, 641 N.E.2d 158 (1994); *Dickson v. Morgenthau*, 102 A.D.2d 168, 476 N.Y.S.2d 841, 843 (1st Dep't 1984). *See also Di Lorenzo v. Murtagh*, 36 N.Y.2d 306, 367 N.Y.S.2d 761, 327 N.E.2d 805, 807 (1975) ("the extraordinary remedy of prohibition lies to review double jeopardy claims"); *Accord Robinson v. Snyder*, 259 A.D.2d 280, 686 N.Y.S.2d 392, 393 (1st Dep't 1999), *leave to appeal denied*, 93 N.Y.2d 810, 694 N.Y.S.2d 632, 716 N.E.2d 697 (1999).

In this case, Morris's double jeopardy claim goes to the very heart of his prohibition petition charging that the trial court had acted improperly. That allegation served as the basis for the Appellate Division's exercise of its discretion to grant permission to review Morris's Article 78 petition. Standing alone without the double jeopardy violation claim, Morris's Article 78 proceeding seeking prohibition may well have been insufficient to invoke the extraordinary remedy. In fact, Morris not only squarely presented his double jeopardy argument to the state courts, but ex-

pressed an unequivocal understanding that they considered and rejected his claim.

Morris confirmed in the proceeding before this Court that he "fairly presented his constitutional double jeopardy claim by means of a pretrial state procedure that . . . is the preferred method for testing whether continued prosecution should be permitted or prohibited as a violation of the double jeopardy guarantee." Response to Objections to Report and Recommendation, dated Feb. 2, 2000, at 6. Indeed, the Magistrate Judge acknowledged that Morris, in his Verified Petition, argued that there had been a violation of the double jeopardy clause. *See* Report at 7. Also compelling is Morris's own statement that "the state appellate court rejected his earlier attempt to avoid this second conviction for the same offense conduct." *See* Memorandum in Support of Petition for a Writ of Habeas Corpus, dated Nov. 4, 1999, at 12 n. 11. Moreover, in his Verified Petition filed with the Appellate Division, Morris argued that the Trial Justice's actions "mandat[ed] the instant relief sought via this proceeding, which violates the defendant MORRIS's double jeopardy rights under the Constitution of the United States" (Verified Petition, ¶ 22) and that Petitioner "will be irreparably harmed, injured and have his constitutional rights vitiated in the event that this Court fails to act. . . ." *Id.,* ¶ 24.

For the purposes of this review, however, what matters is not so much Morris's perception concerning the state courts' consideration of his appeal, as the evidence of what the courts actually did. That both Morris and the Bronx District Attorney, on behalf of the State, confirm that the double jeopardy issue was fairly presented to the state courts is but one piece of important evidence for this purpose. The critical question, therefore, is whether, having been adequately presented with the issue, the state courts considered and adjudicated it. Though admittedly on a sparse record reasonably subject to varying inferences and different interpreta-

tions, this Court concludes that the state courts considered and adjudicated Morris's double jeopardy claim.

First, the very vehicle by which Morris's double jeopardy claim reached the Appellate Division—the Article 78 proceeding—provides persuasive evidence that Morris's double jeopardy issue was an inextricable part of the matter the appellate court considered. As discussed above, under well-established New York state law, the Article 78 proceeding is the appropriate and most expeditious vehicle for advancing a claim of potential violation of double jeopardy in New York courts. Morris's Article 78 petition in this case, by its very nature, presented the merits of his double jeopardy claim to the Appellate Division. That claim is integrally linked with, and served as the foundation for, Morris's first claim that the Trial Justice lacked the authority to vacate the misdemeanor plea and reinstate the felony.

In this regard, this Court agrees with the District Attorney's assertion that "the *sine qua non* premise of the Article 78 proceeding was that the trial court's actions violated the double jeopardy clause." Objections at 7. Standing alone, the petition's first claim would have raised nothing more than an unremarkable proposition as to whether, over the defendant's objection, the trial court prior to sentencing could vacate a guilty plea to a misdemeanor or reinstate a felony charge previously dismissed by oral ruling. Arguably, either such issue by itself may not even have qualified for appellate review on a petition for prohibition. But the record suggests that the state appellate court review did not examine these questions in isolation. What gave Morris's claim its import and the immediacy that raised the question on appeal to the level of a constitutional issue eligible for review in an Article 78 prohibition proceeding was the combination and interrelatedness of these issues: the trial court's acceptance of Morris's misdemeanor plea while a formal decision on the sufficiency of the felony count was still

pending, and its effort to correct the error by vacating the plea and reinstating the previously dismissed indictment.

In this context, the trial court's action was improper and considered error, as may be inferred from the reasoning of the Appellate Division's dissent, precisely because, had the mistake not been corrected, reinstatement of the felony indictment would have raised legitimate double jeopardy concerns. *See Massaro*, 626 N.Y.S.2d at 781. *See e.g., United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993); *Brown v. Ohio*, 432 U.S. 161, 169, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). The correction of the trial court's mistake, the proper authority for which is a matter of state law that this Court must accept in this proceeding, effectively removed the ground upon which Morris's double jeopardy claim properly could be rooted. It restored the action "to its pre-plea status." *See id.* Without the misdemeanor conviction in place, the reinstatement of the felony count would not implicate double jeopardy concerns. *See Dixon,* ·509 U.S. at 696, 113 S.Ct. 2849; *Brown*, 432 U.S. at 169, 97 S.Ct. 2221.

A construction of these events with a reading of the state courts' opinions concluding. that Morris's double jeopardy claim was not considered at either level of state appellate review, would rest on a fallacy that would render the entire state judicial proceedings in this case incoherent and meaningless. Under the facts here, for this Court to accept, as a matter of state law unreviewable here, that the trial court had inherent power to correct its own error and that to that end it was authorized to vacate Morris's misdemeanor plea on its own motion and restore a previously dismissed felony indictment, would clash irreconcilably with the legal conclusion that the trial court's decision taken to exercise that authority to correct such a mistake would then result in a violation of rights under the Double Jeopardy Clause. This Court has difficulty seeing how these two conclusions could stand side by side.

Once the premise is accepted that the trial court's inherent authority under state law to correct its error was properly exercised, the double jeopardy issue, which constituted an elemental reason for the trial. court's error, must necessarily be resolved. This point explains why the Appellate Division majority had no reason to mention the double jeopardy claim, having concluded, wrongly, that the trial court lacked authority to vacate Morris's misdemeanor plea. By the same token, it indicates why, to the contrary, the dissent undertook to address the issue, for its legal conclusion that the trial court did possess that inherent power would have been fatally flawed had the court at the same time not overcome the double jeopardy obstacle subsumed in the analysis of the question it considered. The Court of Appeals' adoption of the dissent's position would be incoherent without its incorporation of this premise.

Second, that the Trial Justice's appeal to the Court of Appeals was as of right, by virtue of a two-Justice dissent that explicitly addressed the double jeopardy issue, also supports a conclusion that the Court of Appeals had Morris's double jeopardy issue fairly presented to it. Third, Morris's double jeopardy claim was included in the papers and arguments made by both parties to the Court of Appeals. *See* Appellant's (Respondents herein) Brief to New York Court of Appeals, dated Oct. 1995, at 16; Respondent's (Petitioner herein) Brief to the Court of Appeals, dated Dec. 22, 1995, at 16, 19–20. Fourth, the Court of Appeals chose implicitly ·to resolve the double jeopardy issue by agreeing with the Appellate Division dissent that the Trial Justice had the inherent authority to correct himself. In support of this proposition, the Court of Appeals cited two of its own prior rulings, both of which concluded that a trial's court's exercise of its inherent authority to vacate a guilty plea did not violate the Double Jeopardy Clause. *See People v. Minaya*, 54 N.Y.2d 360, 445 N.Y.S.2d 690, 429 N.E.2d 1161

(1981); *People v. Bartley*, 47 N.Y.2d 965, 419 N.Y.S.2d 956, 393 N.E.2d 1029 (1979).

The Magistrate Judge's Report dismisses the District Attorney's argument that the mention of these cases in this context represents an implicit finding of no double jeopardy violation in Morris's case. *See* Report at 16–17. The Report does so on the ground that the main focus of the issue discussed in the specific pages of these two decisions to which the Court of Appeals makes reference is the trial court's inherent power to vacate a guilty plea, rather than the double jeopardy question. *See id.* This Court is unable to make such a quantum leap. It cannot read too much into a citation to particular pages of the Court of Appeals' opinions, nor inject itself into the Court of Appeals' state of mind so as to extrapolate from those case references that the court intended its citation to relate solely to one issue, and not simultaneously to contemplate the inextricably related double jeopardy concern also entailed in those decisions. In this Court's view, implicitly, because the trial court's error was so integrally connected with a potential double jeopardy violation, the Court of Appeals' ruling is tantamount to a determination that an absence of authority to correct the error, or a failure to properly exercise the inherent power found to exist, would have implicated Morris's double jeopardy rights.

Consequently, resolution of the state law issue raised on appeal by the Trial Justice's petition required not only the Court of Appeals' consideration, but the resolution of the double jeopardy issue so as to support the court's conclusion, though somewhat cryptically stated, that "[i]n a standard application of this principle to the *unusual developments here*, the Trial Justice cannot be said, *as a matter of law for prohibition purposes*, to have improperly exercised such authority." *Morris*, 642 N.Y.S.2d 618, 665 N.E.2d at 189 (emphasis added). The "unusual developments here" referred to necessarily involved the Trial Justice's improper acceptance of the mis-demeanor guilty plea while the felony count was still pending, and the trial court's subsequent exercise of authority to correct itself.

■ This error the trial court sought to remedy by vacating its acceptance of Morris's guilty plea because, had the court's mistake not been cured, it may very well have constituted a violation of double jeopardy later to convict Morris on the felony charge. For these reasons, this Court concludes that the New York Court of Appeals, in order to address whether the Trial Justice acted improperly, necessarily considered and adjudicated Morris's double jeopardy claim. *See Williams v. Kaiser*, 323 U.S. 471, 477, 65 S.Ct. 363, 89 L.Ed. 398 (1945) ("It is a well established principle of this Court that before we will review a decision of a state court it must affirmatively appear from the record that the federal question was presented to the highest court of the State having jurisdiction and that its decision of the federal question was necessary to its determination of the cause."). Under these circumstances, this Court finds that the Magistrate Judge's de novo review of Morris's double jeopardy claim was not warranted.

### B. *The Certified Question*

In support of his conclusion that neither the Court of Appeals nor the First Department majority reached Morris's double jeopardy issue, the Magistrate Judge noted that the First Department granted Respondent Trial Justice leave to appeal to the New York Court of Appeals and in that connection certified a question. *See* Report at 9. The Magistrate Judge observed:

In its decision, the Court of Appeals explicitly noted that "[a]s the two-Justice dissent was on a question of law, *we need not answer the question certified by the Appellate Division's grant of leave to appeal from its final judgment.*" *In re Van Leer–Greenberg ex rel. Morris v. Massaro*, 87 N.Y.2d 996, 998, 642 N.Y.S.2d 618, 619, 665 N.E.2d

188 (1996) (emphasis added). Since the First Department dissent raises only two points of law—one endorsing the trial court's authority to correct its own errors, the other dismissing any consequent double jeopardy violation—and since the Court of Appeals addressed the first point, *this reference to an unanswered point of law must refer to the double jeopardy.*

Report at 15 n. 2 (latter emphasis added). This Court finds that the conclusion the Magistrate Judge stated in this passage is not a correct finding of the fact or interpretation of the applicable law.

As a general rule, an appeal may be taken to the New York Court of Appeals in two ways: either as of right or by permission. *See* Siegel, *New York Practice*, §§ 526–28. Under section 5601(a) of the CPLR, an appeal may be taken as of right from a final order of the Appellate Division which disposes of an action, in a case where at least two Justices dissent on a question of law supporting the position of the party who takes the appeal. *See* N.Y. C.P.L.R. § 5601(a) (McKinney 1999). Under section 5601(b)(1), an appeal may also be taken as of right from a final order of the Appellate Division which determines an action "where there is directly involved the construction of the constitution of the state or of the United States." N.Y. C.P.L.R. § 5601(b)(1) (McKinney 1999). When an appeal from a final order of the Appellate Division satisfies these provisions, the certification of a stated question to the Court of Appeals is neither necessary nor authorized. *See Wickwire Spencer Steel Co. v. Kemkit Scientific Corp.*, 292 N.Y. 139, 54 N.E.2d 336, 338 (1944); *Keep v. City of Lockport*, 266 N.Y. 583, 195 N.E. 210, 211 (1935).

In other circumstances, leave to appeal to the Court of Appeals, what is referred to as an appeal by permission, may be made pursuant to C.P.L.R. § 5602 only with the approval of either the Appellate Division or the Court of Appeals. In many cases, when the Appellate Division grants leave to appeal, the order from which appeal is taken is not considered a final order. *See* Siegel, *New York Practice*, § 528. In that event, the Appellate Division "shall certify the questions of law decisive of the correctness of its determination or of any separable portion of it." N.Y. C.P.L.R. § 5713 (McKinney 1999). The certified question is a statement of the precise issue the Appellate Division believes ought to be reviewed by the Court of Appeals.

The certification of a question serves to distinguish an appeal by permission from one as of right because the certification procedure applies only where an appeal is not authorized as a matter of right. *See Fahey v. Kennedy*, 230 A.D. 799, 244 N.Y.S. 603, 604 (3d Dep't 1930). Accordingly, as occurred in connection with the Trial Justice's appeal, when presented with a certified question in situations where the order of the Appellate Division appealed from is final and an appeal otherwise exists as of right, the Court of Appeals has consistently determined that it is unnecessary for it to answer the Appellate Division's certified question and typically declines to do so. *See Benitez v. New York City Bd. of Educ.*, 73 N.Y.2d 650, 543 N.Y.S.2d 29, 541 N.E.2d 29, 32 (1989) ("Leave was granted by the Appellate Division on a certified question which need not be answered, as the order appealed from finally determines the action."). *Accord Gonkjur Assocs. v. Abrams*, 57 N.Y.2d 853, 455 N.Y.S.2d 761, 442 N.E.2d 58, 59 (1982); *Associated Metals & Minerals v. Kemikalija*, 10 N.Y.2d 298, 222 N.Y.S.2d 313, 178 N.E.2d 715, 717 (1961); *Weintraub v. Weintraub*, 302 N.Y. 104, 96 N.E.2d 724, 728 n. 1 (1951); *Wickwire Spencer*, 54 N.E.2d at 338; *Keep*, 195 N.E. at 211; *Manton v. Brooklyn & Flatbush Realty Co.*, 206 N.Y. 742, 100 N.E. 1129, 1130 (1912).

In Morris's case, the facts bearing on the certification issue are clear. In May 1995, the Trial Justice, as Respondent in Morris's Article 78 proceeding, moved pur-

suant to C.P.L.R. § 5602(a)(2) for leave to appeal to the Court of Appeals from the Appellate Division's May 23, 1995 decision. *See* Objections, Ex. 4. On June 27, 1995, the Appellate Division granted Respondent's motion and certified a question: "Was the decision and order of this Court entered on May 23, 1995 properly made?" *See* Objections, Ex. 5. However, because there was a two-Justice dissent on a question of law, Respondent Trial Justice was also entitled and sought leave to appeal as a matter of right under CPLR § 5601(a). He so informed the Court of Appeals on June 28, 1995. *See* Objections, Ex. 3.

Here, the New York Court of Appeals acted as it had in the myriad other cases in which the Appellate Division had unnecessarily certified a question in connection with an appeal that qualified to be considered as a matter of right. There was simply no need or authorization for the certification of a question. The Court of Appeals routinely disposed of the matter without answering the certified question by pointing out that, as there was a two-Justice dissent on a question of law, there was no need to answer the question certified by the Appellate Division's grant of leave to appeal from its *final* judgment. *See Massaro,* 642 N.Y.S.2d 618, 665 N.E.2d at 189. *See Reynolds v. Cropsey,* 241 N.Y. 389, 150 N.E. 303 (1926); Arthur Karger, *The Powers of the New York Court of Appeals,* § 58 (3d ed.1997).

■ The question of law raised by the two-Justice dissent that gave rise to the as-of-right appeal, as is apparent from the dissenting opinion, was precisely the trial court's inherent power to correct its error in vacating Morris's misdemeanor plea without violating double jeopardy. The dissent's analysis treats the two issues as fundamentally interrelated. Consequently, this Court does not find an adequate basis to support a finding and interpretation that, as the Magistrate Judge concluded, the Court of Appeals' decision not to answer the Appellate Division's certified question could be construed as a substantive determination that the unanswered question it declined necessarily referred to Morris's double jeopardy claim. Accordingly, this Court concludes that the Court of Appeals' declination to answer the Appellate Division's certified question had no bearing, substantive or otherwise, on its holding or on the issues it considered prior to rendering its decision. To the extent that the Magistrate Judge's factual findings and legal conclusions rested on this assumption, they were not properly founded.

## C. The Relevant Facts And The Law

### 1. The Facts

Section 2254(e)(1) of the habeas statute obliges this Court to defer to the state courts' findings of fact, which are presumed to be correct, unless the habeas petitioner overcomes a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); discussion, *supra.* Here, the Court has determined that the state trial court made explicit findings endorsed by the Court of Appeals which resolved the merits of any factual dispute and were fully supported by the record. The Court cannot support the Magistrate Judge's factual findings and conclusions with regard to two matters.

■ At Morris's sentencing, the Trial Justice declared that "on July 29th, 1994, the Court issued its written decision" denying Morris's motion to dismiss the felony count and thus reinstating the felony charge. *See* Oct. Tr. at 7. He reiterated that "the decision of July 29th, 1994 stands." *See id.* at 8. Similarly, the Court of Appeals stated that

the trial court accepted a plea of guilty from defendant on August 1, 1994 to the misdemeanor charge and agreed to impose a sentence of three years' probation. Sometime thereafter, the Trial Justice filed a written decision, dated July 29, 1994, denying the motion to dismiss and, thus, sustaining the felony count of the indictment.

*Morris,* 642 N.Y.S.2d 618, 665 N.E.2d at 188.

In contrast, the Magistrate Judge concluded that the Trial Justice had produced a "back-dated written order, which despite its date clearly was not prepared until *after* the guilty plea was accepted." Report at 29 n. 8. The Magistrate Judge made a related finding that the trial court "promulgated a back-dated written order reflecting legal make-believe." *Id.* at 31. This conclusion, in this Court's view, runs counter to the explicit instruction of 28 U.S.C. § 2254(e)(1) and applicable decisions of the Supreme Court which mandate appropriate deference to state court factual findings. *See Parke v. Raley,* 506 U.S. 20, 35, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), *reh'g denied,* 506 U.S. 1087, 113 S.Ct. 1068, 122 L.Ed.2d 372 (1993) (citing *Marshall v. Lonberger,* 459 U.S. 422, 431–32, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983)) ("[Q]uestions of historical fact, including inferences properly drawn from such facts, are ... entitled to the presumption of correctness accorded state court factual findings under 28 U.S.C. § 2254(d)."); *Sumner v. Mata,* 449 U.S. 539, 545–47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

Morever, the Magistrate Judge's theory that the trial court's decision was not *prepared* until after its acceptance of Morris's misdemeanor plea (*see* Report at 31) is based on analysis and inferences not persuasively supported by the record. On this point, what the record reflects is that directly after Morris's plea, the Assistant District Attorney asked for a copy of the Trial Justice's decision with regard to the felony count and was informed by the Trial Justice's Law Secretary that it was "not yet completed" but that it would find the grand jury proceedings sufficient to reinstate the felony indictment. *See* Gianfrancesco Aff., Ex. 2. Thus, there is evidence that on the date the Trial Justice accepted Morris's misdemeanor plea, the court also contemplated a reversal of its earlier oral ruling.

A statement that the decision had not been "completed," though apparently already made, is quite different from a conclusion that it not had not been "prepared" and was subsequently written and back-dated. Why the trial court nonetheless accepted Morris's guilty plea on that day remains unexplained in the record, other than by the Trial Justice's admission that it was an error he later realized and sought to correct by vacating the improper plea. While as a theoretical and analytical matter the facts may be subject to different interpretations, the inference the Magistrate Judge drew was not based on a factual basis sufficient to support a convincing conclusion. Accordingly, this Court is constrained not to disturb the state court's factual findings because Morris has failed to show by clear and convincing evidence that those findings were erroneous.

### 2. *The Law*

■ This Court construes the language of 28 U.S.C. § 2254, coupled with its reading of *Williams v. Taylor,* —— U.S. ——, 120 S.Ct. 1495, 146 L.Ed.2d 389, to require that, in considering whether to grant a habeas petition in this case, it be guided solely by relevant precedent of the United States Supreme Court. In this connection, this Court concludes that the United States Supreme Court has not addressed the specific issue related to double jeopardy that is at the heart of this matter— whether jeopardy attaches in connection with and at the time of the acceptance of a guilty plea. *See Ricketts v. Adamson,* 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987). In the Report, the Magistrate Judge agrees with this legal conclusion. *See* Report at 23.

The Court of Appeals' decision rests on a premise, articulated by the Appellate Division dissent, that no double jeopardy violation would arise from state proceedings based on the reinstated felony count because the vacatur of the misdemeanor plea did not " 'terminate' in a 'judgment'—

a conviction and the sentence imposed thereon ... but only in a 'conviction' by virtue of guilty plea...." *See Massaro*, 626 N.Y.S.2d at 782 (citations omitted). This theory was implicitly endorsed by the Court of Appeals in reversing the majority's decision and citing rulings of its own governed by the same principles. *See Minaya*, 54 N.Y.2d 360, 445 N.Y.S.2d 690, 429 N.E.2d 1161; *Bartley*, 47 N.Y.2d 965, 419 N.Y.S.2d 956, 393 N.E.2d 1029. Because the state courts treated Morris's conviction on a guilty plea as not a termination based on a judgment, the trial court could exercise its inherent power to vacate the misdemeanor guilty plea and thereafter reinstate the felony charge. Although neither the Court of Appeals nor the Appellate Division's dissent mentions the United States Supreme Court's holding in *Ohio v. Johnson*, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984), the essence of the Court of Appeals' ruling may be read as analogous to, not inconsistent with, or supported by reasonable inferences flowing from the doctrine the Supreme Court there enunciated. In that case, the Supreme Court held that a prosecution on two more serious offenses after a trial court, over the government's objection, accepted guilty pleas to lesser included offenses would not violate the double jeopardy clause. *Id.* at 494, 104 S.Ct. 2536.

In the absence of clearer and more definitive Supreme Court guidance bearing on the double jeopardy issue presented here, Morris has not established that the New York Court of Appeals' adjudication of the issue on the merits resulted in a decision that was contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Under these circumstances, it cannot be said that the state courts applied a rule that contradicts the governing law set forth in Supreme Court cases, or that the state courts arrived at a result different from that of the Supreme Court's precedents on a set of facts materially indistinguishable from those at issue in relevant Supreme Court decisions. *See*

*Williams,* —— U.S. at —— —— ——, 120 S.Ct. at 1519–20. Moreover, Morris has not shown and this Court cannot conclude that the New York Court of Appeals identified the correct governing legal principle from the United States Supreme Court's decisions but unreasonably applied that principle to the facts of Morris' case. *Id.* at 1521–22. On this basis, the Court of Appeals' action cannot be deemed objectively unreasonable and was fully consistent with applicable habeas corpus law.

Morris cannot escape the New York Court of Appeals' interpretation of a trial judge's right under state law to correct his own error prior to imposition of sentence and the inextricable interrelation between that issue and his double jeopardy claim. In sum, the Court of Appeals' rejection of Morris's double jeopardy claim neither was "contrary to" nor did it involve an "unreasonable application" of "clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1). Therefore, this Court concludes that under 28 U.S.C. § 2254(d)(1), as interpreted by *Williams,* Morris is not entitled to habeas relief.

### 3. *De Novo Review*

The Magistrate Judge's de novo review, which is based on the premise that the state courts did not adjudicate Morris's double jeopardy claim, starts with the assumption that for double jeopardy purposes, jeopardy attaches upon a conviction based on an unconditional acceptance of a guilty plea. *See* Report at 21–29. While acknowledging that the Supreme Court has not directly addressed whether double jeopardy attaches upon the acceptance of a guilty plea, the Magistrate Judge concluded, based on his interpretation of *Johnson,* that under certain circumstances a conviction based on a guilty plea could bar a subsequent prosecution based on the same offense. *See* Report at 27. The Magistrate Judge derived as a controlling rule of *Johnson,* the test that the State "had the

opportunity to marshal its evidence and resources" and chose not to exercise it. *See id.* at 29. The Magistrate Judge then asserted that the State "never objected to Morris's guilty plea to the misdemeanor count or to the dismissal of the felony charges", and that the state could have appealed the dismissal or asked for more time to re-present the felony count to the grand jury. *See id.* at 29–30.

The State challenges these factual findings and legal conclusions. *See* Objections at 16–19. It contends that the prosecutor filed an objection to the dismissal of Morris's indictment that was constant and never withdrawn; that the State, pursuant to New York Criminal Procedure Law ("NYCPL") § 220.10(4), was not required to enter a formal objection to the trial court's acceptance of Morris's misdemeanor plea since the plea related to the entire indictment as it stood then (*see* NYCPL § 220.10(4) (McKinney 1993)), and thus the prosecutor's consent was not required; and that the State was unable to appeal the trial court's dismissal of the felony indictment because the decision had been rendered orally without any explanation and thus was not an appealable final order until reduced to writing and served on the parties. *See id.* The Court finds these arguments persuasive and supported by the record and by the applicable law.

As already set forth above, a chronological recitation of the events on the record here places this discussion in full context. These facts indicate that Morris formally moved on March 4, 1994 for an order to dismiss the indictment. Shortly thereafter, the State formally opposed the motion and provided the court with the grand jury minutes, contending that the transcript would support every element of the crimes alleged.

At the calendar call on May 10, 1994, the trial court orally announced its decision on the motion, dismissing the felony count. The Trial Justice offered no grounds and did not issue a written order. The next conference on the case occurred on June 7, 1994. The Trial Justice then reiterated that he had previously dismissed the felony charged. Responding to defense counsel's inquiry whether a written decision had been filed, the Trial Justice said there "probably was."

Morris's next court appearance occurred on August 1, 1994, the date the Trial Justice accepted Morris's guilty plea. *Prior* to the plea, the prosecutor requested a copy of the court's written decision and was told she should have obtained a copy earlier. The prosecutor attested that "[d]espite ... protests which were made off the record, that there was no written decision available," the trial court accepted Morris's plea. Gianfrancesco Aff., Ex, 2. Directly after the plea, the prosecutor was informed that the decision was not yet completed but that it would reflect that sufficient grounds existed to sustain Morris's charge count and to reinstate that count of the indictment. The prosecutor received the court's written decision "a few days later." *Id.*

Thus, as of the critical date Morris's misdemeanor plea was accepted, the trial court had not yet produced a final written decision and order which would have explained the basis for the Trial Justice's determination regarding the felony count and would have supplied the grounds either for a re-presentment of the case to the grand jury or for an appeal of the dismissal.

The State had already registered its objection to the dismissal when Morris's motion was made, and later allegedly renewed its protests, though off the record. Morris's plea was accepted in regard to the then only existing count of the indictment. Pursuant to NYCPL § 220.10(2), a defendant may plead to an entire indictment as a matter of right (*see* NYCPL § 220.10(2) (McKinney 1993)); the prosecutor's consent is not required for this purpose. Consequently, as the State argues, restating an objection it had already recorded and preserved would have been

legally irrelevant and could not have prevented Morris's misdemeanor plea. *See* Objections at 17.

However, having been informed before the acceptance of the plea that a written decision may have been on file, and told immediately thereafter that the trial court's formal ruling would reinstate the indictment, it appears there was little more that the State could do but await the written order, which the prosecutor avers was received "a few days later." Up to that point, filing an appeal to the dismissal may not have been possible because the requisite final order did not exist. And after being advised on the very day the trial court erroneously accepted Morris's misdemeanor plea that the felony indictment would be upheld, interposing further objection or filing any appeal would have been unfounded and impractical. The trial court, through the Trial Justice's Law Secretary, had already manifested that it would reverse itself with regard to the felony count and sustain the prosecutor's position. This event having transpired so soon after Morris's misdemeanor plea, there was nothing else the State was required to do to preserve its legal position.

On this analysis, this Court cannot fairly read the facts to support a finding that the State "never objected to Morris's guilty plea or to the dismissal of the felony charges." *See* Report at 29. Nor could the circumstances be construed, as decisively as the Magistrate Judge read them, to indicate as a matter of law under *Johnson* that the State had "a full and fair opportunity" to marshal its evidence and resources "and chose not to exercise it." *Id.* This record simply lacks a solid grounding of evidence manifesting the kind of purposeful prosecutorial abuse or overreaching that the Double Jeopardy Clause was intended to curtail. *See Johnson,* 467 U.S. at 502, 104 S.Ct. 2536. To the extent the Magistrate Judge's legal conclusion rested on a factual finding that the Trial Justice accepted Morris's guilty plea to the misdemeanor with the prosecutor's approval or at least "without objection by the prosecution" (*see* Report at 22), this Court does not find that the record sufficiently supports such a finding.

This Court also is unable to conclude as a matter of law that the few days that elapsed after the trial court's error afforded the State a fair opportunity to take appropriate steps to reverse it. Nor, given the reliable indications to the prosecutor by the Trial Justice's Law Secretary that very same day to the effect that the felony charge would be restored, could the Court uphold a finding that the State unreasonably failed to take any further action that could, as Morris argues and the Magistrate Judge suggested, be deemed consent by silence, or a clear manifestation of no intent to challenge the dismissal of the felony count of the indictment.

It is true that there is little in this record that commends the actions of the state trial court, and that Morris may have justifiable grounds to feel prejudiced thereby. But not every error of the government rises to the magnitude of a constitutional violation. On the facts here, this Court is not persuaded that the extensive inferences, uncertain readings of terse state court decisions and the application of such a doubtful record to unsettled federal constitutional law could be fairly reconstructed to yield a sustainable conclusion of unconstitutional action by the State.

Accordingly, this Court is of the view that, even if the State court had not adjudicated Morris's double jeopardy claim, warranting the de novo review undertaken by the Magistrate Judge, on the basis of the present record and the application of the principles articulated by the Supreme Court in *Johnson,* Morris would not be entitled to habeas relief because, in fact, Morris's misdemeanor plea was accepted by the trial court over the State's protests, and the prosecutor did not have a full and fair opportunity to present its evidence as to the felony count in the indictment.

## CONCLUSION

For the reasons stated above, the Court denies the petition. However, a substantial showing of the denial of a constitutional right having been made, a certificate of appealability will issue with respect to Petitioner's double jeopardy claim. *See* 28 U.S.C. § 2253(c)(3); *United States v. Perez*, 129 F.3d 255, 259–60 (2d Cir.1997); *Lozada v. United States*, 107 F.3d 1011, 1014–16 (2d Cir.1997). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Decision and Order would be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**